Nash, C. J.
 

 The correctness of the opinion delivered on the trial of the case below, rests upon the testimony which was be- • forethe jury. It is necessary, therefore, to examine'it, in order to , estimate its bearing upon the law. The blow which was received by the deceased, was inflicted by the prisoner about eight o’clock, of the night of 26th December, 1858, and the death ensued on the 15th or 16th of January, 1854. Gfeorge W. Gibson testified that he was at Hays, about half a mile from Prince’s Shop, the night that the affray took place, and that between six and eight o’clock, the deceased and prisoner had a fight — they were parted, and Hays- took him into his house and fastened the door, and very shortly thereafter some one knocked at the door and enquired for Edwards, the deceased. The latter then went out at the back door and went off — the witness did not know who it was knocked at the door.
 

 Currie, a witness for the prosecution,'stated, that about eight o’clock of the night of the 26th of December, 1858, he went to a store, about half a mile from Rock-fish village, where he found Prince, the keeper of the store, and the deceased. In a short time the prisoner came up with his axe upon his shoulder, and sat it down a little way apart, and accosted them in the usual way. In a short time, the deceased, alluding to a fight on that evening, between him and the prisoner, observed, “Raker, I am sorry I had to hurt you this evening, but I could not help it. I had to protect myself.” The prisoner observed, “It was too late to talk that way now — when a man whipped him when he was drunk, he would not stay beat.” The prisoner and the
 
 *269
 
 deceased talked the matter over in a friendly way, walked off a ■short distance and came back apparently friendly; the prisoner sat down on a chair, and the deceased on the ground near him, ■and to the fire, which was burning out of doors. Baker asked for some liquor, which was brought out by Prince; the prisoner ■and the deceased began again to quarrel — angry words were ■passed between them, and deceased observed, “ he would settle it when Baker got sober,” when Baker said “No, we will settle it now.” The witness was asked by the prisoner to drink some of the liquor, and upon his refusal, threw it into the fire, and walked off some eight or nine paces to where his axe was, picked it up and advanced with it in a half drawn position towards the fire where the deceased was still sitting. The latter said, “ Are you going to kill me with that-axe ?” The prisoner made no reply, but still advanced with the -axe in the same position, elevated, and the handle and blade held out in front of his body, but not drawn back. The deceased then said “stand off,” (the prisoner still advancing,) “if you come any nearer, I will knock you down;” and took from the fire a burning stick of wood, and threw it at the prisoner, which struck him on the shoulder and back, and caused his knees to bend or give way under him.' At the time the prisoner received this blow, he was not near enough to strike the deceased, but was some eight or nine paces from him, and advancing towards him when struck. Immediately after receiving the blow, he pressed upon and after the deceased around, the fire, and struck him one blow up■on the head with the axe. The deceased, with the assistance of Prince and the witness, walked to the village of Rock-fish, where he was taken into house of the prisoner by his directions. On the next day the deceased was walking about, when the same witness observed to the prisoner it was fortunate that
 
 he
 
 was present, as he might have killed the deceased. The prisoner replied with an oath “that was what I intended.”
 

 The physician who was called in, after describing the wound, stated that it was a mortal wound, and the deceased died from
 
 *270
 
 its effects. He could not say whether or not, under skilful treatment, he would have recovered; worse cases are reported as having been cured by treatment.
 

 The prisoner’s counsel then offered to introduce testimony to .show that deceased died in consequence of severe exposure and mal-treatment of the wound, and mistreatment of himself, in walking seven or eight miles, and drinking whiskey, and further offered to call on Dr. Black, who had seen the deceased, but did not examine the wound.
 

 The presiding Judge, after hearing what the counsel intended to prove, remarked that he deemed it proper to inform the counsel what he understood the law to be, and what instructions he should give the jury, which he repeated as stated in his charge, and should leave it with the counsel to introduce the evidence or not, as they, in their discretion, might see proper. The counsel declined to offer any evidence.
 

 In his charge, his Honor gave the instructions to the jury, intimated
 
 to
 
 the counsel; and although they acquiesced in the propriety of the instruction of the Court, by declining to introduce any evidence, thus availing themselves of the right to close the argument to the jury — still, if the charge was, in this particular, wrong, it was an error in law, entitling the prisoner to a
 
 venire de novo.
 
 The testimony of the attending physician was brought to the notice of the jury, and they were instructed, “If these facts were believed by the jury, the law held the prisoner responsible. For when the wound is adequate and calculated to produce death, it would be no excuse to show that had proper caution and attention been given, a recovery might have been effected. Neglect or mal-treatment would not excuse, except in cases in which doubt existed as to the character of the wound; hence if the testimony and opinion of the physician were to be relied on, it was for the jury to say whether there was any ground for doubt.” In this opinion we entirely concur. . It is supported by the highest authorities. In Hawkins’ PI. C. book the 1st, ch. IB, s. 10, it is stated, if a person hurt by another dies thereof,
 
 *271
 
 within a year and a day, it is no excuse for the slayer, that he might have recovered, if he had not neglected to take care of himself. So Lord Hale, 1st vol. Pl. C., 428, says:
 
 “
 
 If a man give another a stroke, which it may be is not
 
 in itself
 
 so mortal, but that with good treatihent he might be cured, yet if he dies ■within the year and day, it is a homicide or murder, as the ease is, and it has always been so held. But if the wound
 
 he not
 
 mortal, but with ill-application by the party, or those around him, of unwholesome salves or medicines, the party dies, if it
 
 clearly appears that the medicines, and not the wound,
 
 was the cause of the death, it seems it is not homicide, but then it
 
 must dearly and certainly appear to he so.
 
 Neglect or disorder in the person who received the blow, will not excuse the person who gives it. In Reeve's ease, Kelynge, 26, it was resolved,
 
 “
 
 that if one gives a wound to another, who negleets the eure of it, and is disorderly and does not keep that rule which a wounded person should do, if he die it is murder or manslaughter, according to the circumstances of the case, because if the wound had not been given, the man would not have died. If the deith be truly owing to the wound, it is immaterial, that •under more favorable circumstances and with more skilful treatment, the fatal consequence might not have resulted.” Thus, if an artery be opened, by the blow or wound, it will be no defence to show that by the assistance of a surgeon, the wound might have been staunched, and life preserved. Eoscoe’s Or. Ev., 575. There was, then, no error in the eharge of his Honor upon.this point. The question as to the nature of
 
 the
 
 wound, and the cause of the death, was properly left to the jury.
 

 The second branch of the charge was as- favorable to the prisoner as wellcould be. His Honor confined the attention of the jury carefully to the transaction at -the fire in the yard at Prince’s, throwing out of view entirely the previous fight at Hays’, the same night. The jury were instructed that if the testimony were believed, the case was one either of murder or manslaughter; and whether one or the .Qiher¿, would depend'mainly upon
 
 *272
 
 the view whieh they might take of what took place at the time when the blow was giyen; for, as the parties had made friends, if a legal provocation was given, the conduct of the prisoner was to be ascribed to that, and not to any previous quarrel. The charge then proceeds: “If after words or anger, the prisoner had' taken up his axe and approached the deceased with a
 
 present purpose and design
 
 to take away his life, or to do him some-great bodily harm, and the jury should, from the facts, be of opinion, that the deceased had sufficient grounds to believe that such was the intention of the prisoner, after the enquiry, and warning given, he (the deceased) had the right to defend himself, and the throwing the chunk of fire, though the prisoner might not have been within striking distance, would not furnish such a legal provocation as to excuse the act of the prisoner, and it would be a case of murder,” The Judge then places the case upon the opposite hypothesis, that the prisoner had no present intention, and leaves it as a proper enquiry for them, and closes with the usual charge as to reasonable doubt. There can be no doubt of the correctness of the charge upon this point in the view which his Honor took of the reconciliation. According to the evidence, when the prisoner advanced towards the deceased, it was with a deadly weapon, raised after a quarrel; the deceased challenged him as to his intention of killing him; the prisoner made no reply, but continued to advance upon him; he was told if he did net stop, the deceased would knock him. down; this threat did not stop him; the deceased was unarmed, and when the prisoner was within eight or nine steps of him, not near enough to §trike, the deceased threw the chunk.' He then endeavored to make his escape; the prisoner pressed upon him while so retreating, and gave the fatal blow. Death ensuing, the prisoner was guilty of murder. If, when the prisoner was advancing upon the deceased with his axe, the latter had killed him, he would have been justified in law. A man may kill another who assaults him in the high-way to rob or ^murder him. So may any man justify a homicide to pre
 
 *273
 
 vent tbe person slain from committing a felony, Haw. b. 1, cb. 10, s. 21. Now, was it necessary for tbe deceased, in tbis case to wait until tbe prisoner got near enough to strike with bis axe ? In sucb ease it might be too late to protect himself. Thus, if a man is advancing upon me with a drawn sword, or a loaded pistol, with tbe avowed purpose to kill me, I am not called on to wait until be gets within tbe distance necessary to enable him to execute bis purpose, but tbe law allows me to arrest bis progress at any moment my safety demands it. Tbe deceased then bad a right to strike tbe prisoner with tbe chunk of fire, as stated in tbe case, and it was not in law a legal provocation to extenuate tbe killing of tbe deceased into manslaughter, 4 Bl. Com. 180.
 

 After the verdict was rendered, the prisoner through bis counsel, moved for a new trial, and in addition to the grounds growing out of the case as before stated, it was objected that the evidence 'did not support the charge contained in the indictment. Tbe indictment charges that the blow was inflicted on the 27th of December, 1853, and that the deceased
 
 instantly died,;
 
 whereas, by the evidence, the blow was inflicted on the night of the 26th of December, 1853, and the death ensued on the 15th or 16th of January following. In cases of homicide, the day of the stroke, as well as that of the death, should be expressed: the former, because, by the law of England, the escheat and forfeiture of lands relate to it; and the latter, because it should appear that the death was within the year and day after the .stroke. Tbe latter is the only reason applicable to the rule in this State, as we know nothing of forfeitures for felonies. Unless the death occurs within the year and day after the stroke, there is no felonious kilbng. 1st Cb. Or. L., 222. Hawkins book 2, cb. 25, says : “Although an indictment, not alleging any time, would be bad, yet it never was necessary upon any indictment to prove that the offence was committed upon the particular day charged.” Roscoe’s Or. Ev. 85 ; 1st Phil. Ev. 203, showing by the evidence that the death ensued within the year and day from the infliction of the blow is sufficient.
 

 
 *274
 
 We concur with his Honor in each branch of his charge, and there is no error. This opinion will be certified to the Superior Court of Cumberland, which will proceed to judgment according to law.
 

 Pee Cueiam. Judgment affirmed.