STATE OF NORTH CAROLINA v. ALFRED RAY VANCE

No. 202PA90

(Filed 2 May 1991)

**1. Common Law § 1 (NCI4th)— effective parts of common law**

So much of the common law as has not been abrogated or repealed by statute or become obsolete is in full force and effect in this state pursuant to N.C.G.S. § 4-1. The "common law" referred to in § 4-1 is the common law of England as of the date of the signing of the Declaration of Independence.

**Am Jur 2d, Common Law §§ 7, 16, 17.**

**2. Homicide § 1.1 (NCI3d)— year and a day rule—prospective abrogation**

The common law "year and a day" rule has become "obsolete" within the meaning of that term in N.C.G.S. § 4-1 and is no longer part of the common law of North Carolina for any purpose. However, prohibitions against *ex post facto* laws embodied in the Fifth and Fourteenth Amendments to

the U. S. Constitution require that this decision abolishing the year and a day rule be given prospective effect only.

**Am Jur 2d, Common Law §§ 16, 17; Constitutional Law §§ 634 et seq.; Homicide § 14.**

3. **Homicide § 1.1 (NCI3d) — year and a day rule — applicable to first and second degree murders**

The year and a day rule has been applied equally to all murders which, for purposes of punishment only, are divided into first degree murders and second degree murders.

**Am Jur 2d, Homicide § 14.**

4. **Homicide § 21.7 (NCI3d) — year and a day rule — second degree murder conviction vacated — judgment for involuntary manslaughter**

Defendant could not be convicted of second degree murder where the uncontroverted evidence showed that the victim died more than a year and a day after an injury was inflicted upon him by defendant. Since the year and a day rule was inapplicable to involuntary manslaughter cases, and the jury, in finding defendant guilty of second degree murder, necessarily had to find facts establishing the lesser included offense of involuntary manslaughter, the case will be remanded for judgment as upon a verdict of guilty of involuntary manslaughter.

**Am Jur 2d, Homicide §§ 14, 53, 56 et seq.**

**Homicide as affected by lapse of time between injury and death. 60 ALR3d 1323.**

Justice MARTIN dissenting in part.

ON discretionary review, pursuant to N.C.G.S. § 7A-31, of the decision of the Court of Appeals, 98 N.C. App. 105, 390 S.E.2d 165 (1990), which found no error in the trial of the defendant or in the judgment for second degree murder entered on 2 February 1988 by *Freeman, J.*, in the Superior Court, FORSYTH County. Heard in the Supreme Court on 14 February 1991.

*Lacy H. Thornburg, Attorney General, by Linda Anne Morris, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, and Constance Everhart, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The central issue before this Court on appeal is whether the trial court erred in denying the defendant's motion to dismiss the charge upon which he was tried for second degree murder; his motion to dismiss was based on the common law year and a day rule. Although today we prospectively abrogate the year and a day rule, we conclude that the trial court erred and that the decision of the Court of Appeals finding no error must be reversed. We further conclude that the judgment against the defendant for second degree murder must be vacated and this case remanded for judgment as upon a verdict for involuntary manslaughter.

The State's evidence tended to show that the defendant drank beer with friends at a Winston-Salem bar from 5:00 p.m. until shortly before midnight on 10 March 1987. During that period, the defendant was seen drinking at least four beers. He then drove with a friend from the bar to the friend's home, approximately a mile and a half from the bar. The defendant started to take his other passenger, Bobby Caddell, home.

Shortly after midnight, Lanny Lee Bradley and his wife were traveling west on Union Cross Road in a pickup truck. The car driven by the defendant crossed over into the oncoming lane of traffic, where the car struck the Bradleys with such force that it split in half and its front section traveled 170 feet after impact. Union Cross Road is a rural, paved highway running east and west with a posted speed limit of fifty-five miles per hour.

Bobby Caddell's body was found lying in the westbound lane of the road. Mrs. Bradley was buried under wreckage from the collision, and she was barely breathing. She was later pronounced dead at the scene of the accident. Lanny Lee Bradley was pinned in his truck, having difficulty breathing. He was given emergency treatment at the accident scene and transported to the hospital.

Deputy L. E. Gordon of the Forsyth County Sheriff's Department arrived shortly after the collision. He went to the front section of the defendant's car, which was overturned with the defendant inside. Deputy Gordon removed the defendant from the car. The defendant had sustained injuries to his head and knees and had a strong smell of alcohol on his breath. Gordon then went to determine if he could assist the Bradleys. When Gordon turned around, the defendant was gone.

Meanwhile, the defendant had hitched a ride from two individuals who detected a strong odor of alcohol on his breath. They took him to his mother's home. Shortly after 1:00 a.m., the defendant was taken from his mother's home by ambulance to the hospital. When questioned about what had caused his injuries, the defendant stated, "I guess because I had a wreck." The results of a test performed on blood drawn from the defendant at 2:29 a.m. showed an alcohol content of 0.104 grams per 100 milliliters of blood.

Lanny Lee Bradley experienced a severe head injury as a result of the collision with the defendant. In addition to a tube placed in his windpipe to enable him to breathe, he received intravenous fluids to raise his blood pressure. A CAT scan, done at the hospital, showed severe swelling of his brain.

Lanny Lee Bradley remained totally unconscious in the intensive care neurological ward for four months, completely dependent upon life support systems. He was moved from intensive care when his vital signs stabilized. Occasionally, he would open his eyes and appear to look around, but he never regained consciousness beyond that point. While hospitalized, he was connected to a ventilator for oxygen and was given fluid intravenously. He was also given medication to prevent any seizures due to the head injury. On 3 May 1988, he died from respiratory failure and bacterial pneumonia—both of which related to his head injury.

At trial, the jury returned a verdict finding the defendant guilty of the second degree murder of Lanny Lee Bradley. The trial court entered judgment on that verdict and sentenced the defendant to a twenty-year term of imprisonment.

On appeal to the Court of Appeals, the defendant contended, *inter alia*, that the murder charge against him should have been dismissed under the common law "year and a day" rule because uncontroverted evidence showed that Bradley had died fourteen months after the collision. The Court of Appeals rejected the defendant's contention and held that his trial was free from prejudicial error. On 27 July 1990, this Court allowed the defendant's petition for discretionary review, limited to the issue of the applicability of the year and a day rule.

[1]  Before addressing the defendant's assignment of error, a review of the history of the "year and a day" rule is helpful. Our General

Assembly has declared that so much of the common law as has not been abrogated or repealed by statute or become obsolete is in full force and effect in this state. N.C.G.S. § 4-1 (1986); *see, e.g., State v. Buckom*, 328 N.C. 313, 401 S.E.2d 362 (1991); *Martin v. Thornburg*, 320 N.C. 533, 359 S.E.2d 472 (1987); *McMichael v. Proctor*, 243 N.C. 479, 91 S.E.2d 231 (1956); *State v. Hampton*, 210 N.C. 283, 186 S.E. 251 (1936). The "common law" referred to in N.C.G.S. § 4-1 is the common law of England as of the date of the signing of the Declaration of Independence. *Buckom*, 328 N.C. 313, 401 S.E.2d 362; *Hall v. Post*, 323 N.C. 259, 372 S.E.2d 711 (1988); *Steelman v. City of New Bern*, 279 N.C. 589, 184 S.E.2d 239 (1971).

Under the common law of England, a killing was not murder unless the death of the victim occurred within a year and a day of the act inflicting injury. 4 W. Blackstone, *Commentaries* *197; *see* H. Broom, *Commentaries on the Common Law* *935 (1856). Otherwise, the loss of life would be attributed to natural causes rather than the distant act inflicting injury. R. Perkins & R. Boyce, *Criminal Law* 46 (3d ed. 1982). This requirement envisioned that the death must be shown to be "sufficiently connected with the act." 3 W. Holdsworth, *A History of English Law* 315 (3d ed. 1923).

Our research discloses that the origins of the rule are generally traced to the thirteenth century. The statute which may have led to the evolution of the rule reads as follows:

An Appeal of Murther . . . . (4) It is provided also, that no Appeal shall be abated so soon as they have been heretofore; but if the appellor declare the Deed, the Year, the Day, the Hour, the Time of the King, and the Town where the Deed was done, and with what Weapon he was slain, the Appeal shall stand in Effect, (5) and shall not be abated for Default of fresh Suit, if the Party shall sue within the Year and the Day after the Deed done.

Statutes of Gloucester, 6 Edw. I, c. IX (1278); *see State v. Hefler*, 310 N.C. 135, 310 S.E.2d 310 (1984). The year and a day time period which found its way into the criminal law may have been "connected with the fact that it was the length of time within which the relatives" of the victim could bring the "appeal of death" they were entitled to bring as private citizens. 3 W. Holdsworth, *supra*, at 315; *see State v. Hefler*, 310 N.C. 135, 310 S.E.2d 310 (1984). *But cf. United States v. Jackson*, 528 A.2d 1211 (D.C. 1987)

("Since the origins and purposes of the rule are obscure, we cannot say with certainty why the rule came into existence."). The appeal of death or "appeal of Murther" recognized by the ancient common law and referred to in the Statutes of Gloucester "was a private and vindictive process by an interested party . . . which grew out of the old Germanic custom of 'weregild', or compensation for the death." *Commonwealth v. Ladd*, 402 Pa. 164, 167, 166 A.2d 501, 503 (1960). It is notable that appeals of death, rather than prosecutions for murder, were contemplated under the Statutes of Gloucester. *Id.* It appears that only Coke, among the commentators on the common law of England, states that "the rule is said to run from the death both in public prosecutions for murder and in private appeals of death." *Id.* at 167-68, 166 A.2d at 503. As applied in American courts, however, the year and a day rule generally has been viewed to have applied in public prosecutions and to have "operated like an ordinary statute of limitations." *Commonwealth v. Lewis*, 381 Mass. 411, 413, 409 N.E.2d 771, 772 (1980), *cert. denied*, 450 U.S. 929, 67 L. Ed. 2d 360 (1981). *But see People v. Mudd*, 154 Ill. App. 3d 808, 812, 507 N.E.2d 869, 872 (1987) ("[T]he 'year and a day rule' did not operate in the nature of a statute of limitations barring prosecution. So long as the death occurred within the specified time frame, it was then presumed the blow or injury caused the death for purposes of a homicide prosecution."). There is some "suggestion that the rule was intended to simply soften the old brutal law regarding homicides." *Lewis*, 381 Mass. at 414, 409 N.E.2d at 773. There is also support for the proposition that the rule was created by judges due to the uncertainty of medical science in determining the cause of death when the death occurs so long after the injury. *See Hefler*, 310 N.C. at 140, 310 S.E.2d at 313; W. LaFave & A. Scott, *Criminal Law* § 3.12(i) (2d ed. 1986).

The common law year and a day rule, as it has been applied in murder cases in North Carolina, was first stated by this Court in *State v. Orrell*, 12 N.C. (1 Dev.) 139 (1826). There, we said that "if death did not take place within a year and a day of the time of receiving the wound, the law draws the conclusion that it was not the cause of death; and neither the court nor jury can draw a contrary one. . . . For if death happened beyond that time, the law would presume that it proceeded from some other cause than the wound." *Id.* at 141. Subsequently, the validity of the rule has been recognized by this Court in five murder cases.

STATE v. VANCE

[328 N.C. 613 (1991)]

*State v. Pate*, 121 N.C. 659, 28 S.E. 354 (1897); *State v. Morgan*, 85 N.C. 581 (1881); *State v. Haney*, 67 N.C. 467 (1872); *State v. Baker*, 46 N.C. (1 Jones) 267 (1854); *State v. Shepherd*, 30 N.C. (8 Ired.) 195 (1847).

In *Hefler*, we refused to apply the year and a day rule to involuntary manslaughter cases but expressly left open the issue of whether it should continue to apply in murder cases. 310 N.C. at 141, 310 S.E.2d at 313. There, in a scholarly opinion by Justice Martin, we took judicial notice of significant advances in both medical science and crime detection, as well as the fact that these advances have resulted in sophisticated medical tests, analyses, and diagnoses that allow positive evidence to be presented to a jury on questions of causation in criminal prosecutions. *Hefler*, 310 N.C. at 140, 310 S.E.2d at 313.

[2] We now conclude that, whether we choose to view the year and a day rule as derived from limitations placed upon appeals of death by ancient law or as arising from concerns about the limitations of medical science, any rationale for the rule is anachronistic today. Therefore, we conclude that the year and a day rule has become "obsolete," within the meaning of that term as used in N.C.G.S. § 4-1, and declare that the rule is no longer part of the common law of North Carolina for any purpose. In so doing, we follow the clear modern trend in other jurisdictions to abrogate the rule. W. LaFave & A. Scott, *Criminal Law* 299 (2d ed. 1986); R. Perkins & R. Boyce, *Criminal Law* 47 (3d ed. 1982); *see United States v. Jackson*, 528 A.2d 1211, 1220 (D.C. 1987) ("Since the origin and rationale for the year and a day rule are hazy, and the generally acknowledged reason for the rule now appears highly suspect, we deem judicial abolition of the judicially-created rule appropriate."); *Commonwealth v. Lewis*, 381 Mass. 411, 418, 409 N.E.2d 771, 775 (1980) (footnote omitted) ("We share the view that the rule is no longer supportable in reason, and that its relegation to the shades of history may be accomplished by court decision."), *cert. denied*, 450 U.S. 929, 67 L. Ed. 2d 360 (1981); *People v. Stevenson*, 416 Mich. 383, 394, 331 N.W.2d 143, 147 (1982) ("rule has outlived its usefulness"); *State v. Sandridge*, 5 Ohio Op. 419, 421, 365 N.E.2d 898, 899 (1977) ("Today, the retention of the 'year and a day rule' is clearly an anachronism."); *State v. Hudson*, 56 Or. App. 462, 642 P.2d 331 (1982) ("rule is no longer applicable"); *Commonwealth v. Ladd*, 402 Pa. 164, 173, 166 A.2d 501, 506 (1960) ("There is now no more reason for a rule of a

year and a day than there is for one of a hundred days or a thousand and one nights."); *State v. Pine*, 524 A.2d 1104, 1107 (R.I. 1987) ("[T]he long life of the rule may result from the infrequency with which the issue has been raised. Courts, therefore have not been given the opportunity to address it."); *State v. Edwards*, 104 Wash. 2d 63, 69, 701 P.2d 508, 511 (1985) ("Medical science has progressed to such a degree it makes little sense to have a rule which requires death to occur within a particular time to resolve issues of causation."). *But see State v. Minster*, 302 Md. 240, 245, 486 A.2d 1197, 1199 (1985) ("[W]e believe it is the legislature which should mandate any change in the rule, if indeed any change is appropriate.").

The defendant recognizes that this Court may abrogate the common law year and a day rule, but argues that we may do so only prospectively. He contends that any change in the application of the rule would amount to an unconstitutional *ex post facto* law, if applied to his case. Both our state and federal constitutions forbid the enactment of *ex post facto* laws. U.S. Const. art. I, § 10; N.C. Const. art. I, § 16. Since its earliest decisions, the Supreme Court of the United States has defined an *ex post facto* law as one which (1) makes an action criminal which was done before the passing of the law and which was innocent when done, (2) aggravates a crime or makes it greater than when it was committed, (3) allows imposition of a different or greater punishment than was permitted when the crime was committed, or (4) alters the legal rules of evidence to permit different or less testimony to convict the offender than was required at the time the offense was committed. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648, 650 (1798). That Court has also stated that "two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29, 67 L. Ed. 2d 17, 23 (1981).

Although the *ex post facto* clauses are directed specifically at legislative action, the Supreme Court of the United States has held that the fifth and fourteenth amendments to the Constitution of the United States also forbid retroactive application of an unforeseeable judicial modification of criminal law, to the disadvantage of the defendant. *Marks v. United States*, 430 U.S. 188, 191-92, 51 L. Ed. 2d 260, 264-65 (1977); *Bouie v. City of Columbia*, 378

U.S. 347, 355, 12 L. Ed. 2d 894, 900 (1964); *accord State v. Waddell*, 282 N.C. 431, 446, 194 S.E.2d 19, 29 (1973) ("[T]he constitutional ban against the retroactive increase of punishment for a crime applies as well against judicial action having the same effect."). *But see State v. Cooper*, 304 N.C. 701, 705, 286 S.E.2d 102, 104 (1982) ("Decisions are presumed to operate retroactively, and overruling decisions are given solely prospective application only when there is compelling reason to do so."); *State v. Rivens*, 299 N.C. 385, 392, 261 S.E.2d 867, 871 (1980) (citation omitted) ("There is no violation of the *ex post facto* clause in the United States Constitution when a decision is applied retroactively because the clause applies to legislative and not judicial action. . . . A party has no vested right in a decision of this Court.").

Although not a controlling consideration, we note that of the six courts which since 1960 have judicially abolished the year and a day rule, five have given their decisions prospective effect only. *United States v. Jackson*, 528 A.2d 1211 (D.C. 1987); *Commonwealth v. Lewis*, 381 Mass. 411, 409 N.E.2d 771 (1980), *cert. denied*, 450 U.S. 929, 67 L. Ed. 2d 360 (1981); *People v. Stevenson*, 416 Mich. 383, 331 N.W.2d 143 (1982); *State v. Young*, 77 N.J. 245, 390 A.2d 556 (1978); *State v. Pine*, 524 A.2d 1104 (R.I. 1987). *Contra Commonwealth v. Ladd*, 402 Pa. 164, 166 A.2d 501 (1960) (abrogation of rule applied retroactively). We conclude that the prohibitions against *ex post facto* laws embodied in the fifth and fourteenth amendments to the Constitution of the United States require that we give this decision abolishing the year and a day rule prospective effect only. As a result, the defendant's conviction for second degree murder must be deemed to be error.

[3, 4] In *Orrell*, the first case in which this Court applied the year and a day rule, it was held that where the death of the deceased occurred more than a year and a day after the defendant shot him, the defendant could not be held guilty of the murder of the deceased. 12 N.C. (1 Dev.) at 141. When *Orrell* was decided in 1826, no degrees of murder were known to the law. Prior to 1893, the common law definition of murder applied and simply made *all* intentional and unlawful killings of human beings with malice aforethought, express or implied, murder. *State v. Davis*, 305 N.C. 400, 290 S.E.2d 574 (1982); *State v. Rhyne*, 124 N.C. 847, 33 S.E. 128 (1899). In 1893, the General Assembly enacted 1893 N.C. Pub. Laws ch. 85, the terms of which are now embodied in N.C.G.S. § 14-17. That statute classifies murders as either first

or second degree, but *only* for purposes of assigning punishment; it does not define or redefine the crime of murder. *Davis*, 305 N.C. at 422-23, 290 S.E.2d at 588; *State v. Streeton*, 231 N.C. 301, 305, 56 S.E.2d 649, 652 (1949). It is well settled that when a statute addresses a crime known at common law without otherwise defining it, the common law definition of the crime applies. *Buckom*, 328 N.C. 313, 401 S.E.2d 362; *State v. Roberts*, 286 N.C. 265, 210 S.E.2d 396 (1974); *State v. Ingland*, 278 N.C. 42, 178 S.E.2d 577 (1971). This Court has often held that, as N.C.G.S. § 14-17 does not define the crime of murder, the definition of that crime remains the same as it was at common law when *Orrell* was decided. *E.g., Davis*, 305 N.C. at 422-23, 290 S.E.2d at 588; *Streeton*, 231 N.C. at 305, 56 S.E.2d at 652. That common law definition of any intentional and unlawful killing of a human being with malice aforethought, express or implied, as murder includes all murders now divided by the statute into first and second degree murder for purposes of punishment. *State v. Smith*, 221 N.C. 278, 289-90, 20 S.E.2d 313, 320-21 (1940). Therefore, the year and a day rule applied to the crime of murder in *Orrell* applied equally to all murders which, for purposes of punishment *only*, are today divided into first degree murders and second degree murders. In fact, this Court noted in one of its earliest reported cases on the subject of the year and a day rule as applied in North Carolina that: "Unless the death occurs within the year and day after the stroke [inflicted on the victim by the defendant], *there is no felonious killing.*" *State v. Baker*, 46 N.C. (1 Jones) 267, 273 (1854) (emphasis added). Accordingly, under our prior cases, the defendant could not be found guilty of murder in the present case, as the victim died more than a year and a day after the injury was inflicted upon him by the defendant.

To apply today's decision abrogating the year and a day rule to permit the defendant to be convicted of murder in the present case would, at the very least, permit his conviction upon less evidence than would have been required to convict him of that crime at the time the victim died and would, for that reason, violate the principles preventing the application of *ex post facto* laws. *Calder*, 3 U.S. (3 Dall.) at 390, 1 L. Ed. at 650. Retroactive application of our decision today, so as to uphold the judgment for murder in the present case, clearly would be to apply this decision to events occurring before this decision and severely disadvantage the defendant; to do so would violate the principle emanating from

the fifth and fourteenth amendments to the Constitution of the United States forbidding retroactive application of an unforeseeable judicial modification of criminal law. *Marks*, 430 U.S. at 191-92, 51 L. Ed. 2d at 264-65; *Bouie*, 378 U.S. at 355, 12 L. Ed. 2d at 900. Therefore, the judgment against the defendant for second degree murder must be vacated.

At the time the defendant struck the victim in the present case and at the time the victim died, however, we had made it clear that the year and a day rule would not be applied to involuntary manslaughter cases. *Hefler*, 310 N.C. at 141, 310 S.E.2d at 313. Therefore, the defendant concedes that the rule would not have prevented his being convicted and sentenced for involuntary manslaughter. In the present case, the trial court submitted possible verdicts finding the defendant guilty of second degree murder, guilty of the lesser included offense of involuntary manslaughter or not guilty. The jury convicted the defendant of second degree murder, and the judgment for second degree murder which we hold must be vacated was entered upon that verdict. In finding the defendant guilty of second degree murder, however, the jury necessarily had to find facts establishing the lesser included offense of involuntary manslaughter. *See State v. Greene*, 314 N.C. 649, 336 S.E.2d 87 (1985). Hence, leaving the jury's verdict undisturbed but recognizing it for what it is, this case will be remanded for judgment as upon a verdict of guilty of involuntary manslaughter. *See State v. Freeman*, 307 N.C. 445, 298 S.E.2d 376 (1983); *State v. Dawkins*, 305 N.C. 289, 287 S.E.2d 885 (1982); *State v. Jolly*, 297 N.C. 121, 130, 254 S.E.2d 1, 7 (1979).

The decision of the Court of Appeals finding no error in the trial and judgment against the defendant for second degree murder is reversed. This case is remanded to the Court of Appeals for its further remand to the Superior Court, Forsyth County, with instructions that the Superior Court vacate the judgment for second degree murder and enter a judgment against the defendant as upon a verdict finding him guilty of involuntary manslaughter, giving him credit upon the new commitment for any time heretofore served under the judgment and commitment for second degree murder.

Reversed and remanded with instructions.

Justice MARTIN dissenting in part.

I concur in the majority's holding that the "year and a day" rule is no longer useful in the administration of justice in North Carolina and abrogation of the rule prospectively.

However, I dissent from the holding in this case which applies the "year and a day" rule to the charge of murder in the second degree against defendant Vance.

The indictment in this case positively shows that it is only a charge of murder in the second degree. The indictment reads: "Indictment Second Degree Murder." Further, the agreed record on appeal recites that defendant was tried and convicted on the charge of murder in the second degree. Even the arrest warrant was on charge of murder in the second degree. This is not a case where defendant was charged with murder in the first degree and convicted of murder in the second degree. Vance was never charged with murder in the first degree.

It is not appropriate to extend the "year and a day" rule to charges of murder in the second degree. The reasoning of this unanimous Court in *State v. Hefler*, 310 N.C. 135, 310 S.E.2d 310 (1984), applies most cogently to the instant case, and the reader is referred to that opinion for a full discussion of the rule. *See also* Note, *Criminal Law—Homicide—Death Resulting More Than a Year and a Day After Assault*, 40 N.C.L. Rev. 327 (1962).

As stated in *Hefler*, the six cases mentioning the rule all involved sentences of death. Only in *State v. Orrell*, 12 N.C. 139 (1826), was the judgment of death arrested. This Court has never applied the rule to a charge of murder in the second degree. This is the first case in North Carolina in which a defendant has argued that the rule should be applied to a charge of murder in the second degree.

The reason for applying the rule to murder cases where the defendant's life is at stake is that under those circumstances the rule of law ought to be certain. With the uncertainty as to the cause of death because of the long lapse of time between the infliction of the wound and death, the law applied a definite rule in cases in which the defendant's life was at stake; if the death occurred more than a year and a day after the infliction of the wound, defendant could not be prosecuted on the charge involving the death penalty. *See State v. Hefler*, 310 N.C. 135, 310 S.E.2d 310

**STATE v. VANCE**

[328 N.C. 613 (1991)]

(1984); 3 Coke, Institutes 53 (1817); *see State v. Brown*, 21 Md. App. 91, 318 A.2d 257 (1974).

These reasons do not exist in the present appeal where the defendant was only charged and convicted of murder in the second degree. N.C.G.S. § 14-17 defines murder in the second degree and establishes it as a class C felony for the purposes of punishment. N.C.G.S. § 14-17 (1986) (entitled "Murder in the first and second degree defined; punishment."). A class C felony is punishable by imprisonment up to fifty years or by life imprisonment. N.C.G.S. § 14-1.1 (1986). In fact, defendant received a sentence of imprisonment for twenty years.

Under N.C.G.S. § 14-17 murder in the second degree has been construed to be the unlawful killing of a human being with malice. *State v. Robbins*, 309 N.C. 771, 309 S.E.2d 188 (1983); *State v. Foust*, 258 N.C. 453, 128 S.E.2d 889 (1963). Malice "aforethought" is not an element of murder in the second degree. *State v. Duboise*, 279 N.C. 73, 181 S.E.2d 393 (1971); *State v. McGee*, 47 N.C. App. 280, 267 S.E.2d 67, *cert. denied*, 301 N.C. 101, 273 S.E.2d 306 (1980).

The majority properly addresses the issue of retroactivity concerning the abolition of the rule. However, the majority does not discuss why the rule is applied in this case of murder in the second degree.

> When a court is abolishing a rule of law, it is submitted that the proper exercise of judicial power should be explained and supported by broad policies concerning the criminal law . . .

*State v. Brown*, 21 Md. App. 91, 96, 318 A.2d 257, 261 (1974) (quoting from Note, *The Abolition of the Year and a Day Rule: Commonwealth v. Ladd*, 65 Dick. L. Rev. 166, 169 (1961)). The majority fails to cite any case or authority holding that the "year and a day" rule is applicable to a charge of murder in the second degree—and with good reason. The majority will stand alone in applying the rule to murder in the second degree.

The majority does not articulate, nor do I find, any convincing reason to extend the "year and a day" rule to this case of murder in the second degree where the defendant's life was never at stake. I dissent from this holding of the majority.