IN THE SUPREME COURT OF NORTH CAROLINA

No. 240A22

Filed 15 December 2023

STATE OF NORTH CAROLINA

v.

DARREN O'BRIEN LANCASTER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 284 N.C. App. 465 (2022), finding no error in part and vacating in part judgments entered on 14 September 2020 by Judge Joshua W. Willey Jr. in Superior Court, Craven County, and remanding the case for resentencing. Heard in the Supreme Court on 21 September 2023.

*Joshua H. Stein, Attorney General, by Zachary K. Dunn, Assistant Attorney General, for the State-appellant.*

*Craig M. Cooley for defendant-appellee.*

BERGER, Justice.

Upon conducting an *Anders* review, the Court of Appeals determined that the indictment charging defendant with going armed to the terror of the public was deficient. According to the Court of Appeals, the State's failure to allege in the indictment that the crime occurred on a public highway deprived the trial court of jurisdiction. We reverse.

### I.    Factual and Procedural Background

On 30 September 2019, officers with the Havelock Police Department

responded to a call of an individual "waving a gun and firing rounds off kind of aimlessly in the parking lot" of an apartment complex located behind a local high school. The officers soon received another call that the same individual was at a separate nearby location "with a firearm and was yelling at a female." Upon their arrival at the second location, the officers located and detained defendant. The officers discovered a Hi-Point 9mm handgun in a nearby vehicle, and the vehicle's owner testified at trial that the gun belonged to defendant.

Defendant was indicted for multiple offenses, including two counts of going armed to the terror of the public. As is relevant to our consideration, the indictments alleged that he "unlawfully, willfully and feloniously did go armed to the terror of the public by causing a disturbance and waving a firearm around in the parking lot[s]" of the two locations.

Defendant's matter came on for trial on 14 September 2020, and after defendant waived his right to a jury trial, he was found guilty of possession of a firearm by a felon, injury to personal property, resisting a public officer, and one count of going armed to the terror of the public. The charges were consolidated and the trial court sentenced defendant to a minimum of fifteen months and a maximum of twenty-seven months in prison. Defendant appealed.[1]

---

[1] The Court of Appeals noted that it was "not apparent from the record that [d]efendant properly noticed his appeal," but that court nevertheless issued a writ of certiorari to remedy any jurisdictional question. *State v. Lancaster*, 284 N.C. App. 465, 466 n.1 (2022). Although the State has not argued that the Court of Appeals abused its discretion in issuing this writ, "a writ of certiorari 'is not intended as a substitute for a notice of appeal.'"

At the Court of Appeals, defendant's counsel was unable to identify any errors in defendant's trial and instead submitted an *Anders* brief requesting that the Court of Appeals examine the record for any meritorious issues. *See Anders v. California*, 386 U.S. 738 (1967). The Court of Appeals examined the record and identified what it contended was a meritorious issue related to the validity of the indictment charging defendant with going armed to the terror of the public.[2] Relying on its previous decision in *State v. Staten*, 32 N.C. App. 495 (1977), the Court of Appeals' majority concluded that the indictment was fatally defective and failed to confer jurisdiction upon the trial court because it "failed to allege" an essential element of the common law crime of going armed to the terror of the public, specifically, "that [d]efendant committed his act on a 'public highway.'" *State v. Lancaster*, 284 N.C. App. 465, 466 (2022). Accordingly, the Court of Appeals vacated the judgment convicting defendant of going armed to the terror of the public and remanded the matter for resentencing. *Id.*

In a separate opinion, Judge Griffin agreed the panel was bound by the Court of Appeals' previous decision in *Staten* but reasoned that the indictment's allegation

---

*Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 573 (2023) (quoting *State v. Ricks*, 378 N.C. 737, 741 (2021)). This is so because "[i]f courts issued writs of certiorari solely on the showing of some error below, it would 'render meaningless the rules governing the time and manner of noticing appeals.'" *Id.* (quoting *Ricks*, 378 N.C. at 741).

[2] It appears that neither defendant nor the State was given an opportunity to brief the issue identified by the Court of Appeals following its *Anders* review. Even where the argument and reasoning of the Court of Appeals may be sound, the better practice is to order supplemental briefing on the issue so identified. Such action permits full vetting of the issue and avoids potential prejudice to either party on appeal.

"that the act was committed in the parking lot of an apartment complex" was sufficient. *Id*. at 471–72 (Griffin, J., concurring in part and dissenting in part). Accordingly, he concluded there was no error in the trial court's judgments. *Id*.

## II.    Analysis

The State appealed based upon the dissent, arguing that the indictment was sufficient because the common law crime of going armed to the terror of the public does not contain an element that the conduct occur about a public highway, and that even if such element exists, an apartment parking lot is connected to and therefore "about" a public highway. Defendant argues that the indictment was fatally defective because it failed to allege that (1) defendant's actions occurred about a public highway, (2) defendant armed himself with an unusual and dangerous weapon, and (3) defendant acted with the purpose of terrorizing the people. We must, therefore, determine whether the indictment is fatally defective in light of our precedent that "[q]uashing of indictments and warrants is not favored." *State v. Abernathy*, 265 N.C. 724, 726 (1965).

"The sufficiency of an indictment is a question of law reviewed de novo." *State v. White*, 372 N.C. 248, 250 (2019).

"Except in misdemeanor cases initiated in the District Court Division, no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment." N.C. Const. art. I, § 22. An "indictment is a written accusation by

a grand jury, filed with a superior court, charging a person with the commission of one or more criminal offenses." N.C.G.S. § 15A-641(a) (2021).

"An indictment need not conform to any technical rules of pleading but instead must satisfy both statutory strictures and the constitutional purposes which indictments are designed to satisfy, i.e., notice sufficient to prepare a defense and to protect against double jeopardy." *In re J.U.*, 384 N.C. 618, 623 (2023) (cleaned up) (quoting *State v. Oldroyd*, 380 N.C. 613, 617 (2022)); *see also State v. Sturdivant*, 304 N.C. 293, 311 (1981) (stating that an indictment's "purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime").

Although earlier common law principles certainly conveyed that defective indictments implicated jurisdictional concerns, the General Assembly's adoption of the Criminal Procedure Act represented a sharp departure from the demands of technical pleading. *See Oldroyd*, 380 N.C. at 619 ("[T]he Criminal Procedure Act of 1975 . . . statutorily modernize[d] the requirements of a valid indictment."); *see also United States v. Cotton*, 535 U.S. 625, 630 (2002) (overruling the common law principle that a defective indictment deprives a court of jurisdiction and noting that the common law's "elastic concept of jurisdiction is not what the term 'jurisdiction' means today, *i.e.*, 'the courts' statutory or constitutional *power* to adjudicate the case' " (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998))).

Since adoption of the Act, "[t]his Court has been consistent in retreating from the highly technical, archaic common law pleading requirements which promoted form over substance." *In re J.U.*, 384 N.C. at 622. "Instead, contemporary criminal pleading requirements have been designed to remove from our law unnecessary technicalities which tend to obstruct justice." *Id.* at 623 (cleaned up) (quoting *State v. Williams*, 368 N.C. 620, 623 (2016)). After all, "it would not favor justice to allow [a] defendant to escape merited punishment upon a minor matter of form." *Sturdivant*, 304 N.C. at 311.

Thus, indictments and other criminal pleadings are

> sufficient in form for all intents and purposes if [they] express the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality of refinement, if in the bill of proceeding, sufficient matter appears to enable the court to proceed to judgment.

N.C.G.S. § 15-153 (2021). Indictments simply must contain, as is relevant here, "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." N.C.G.S. § 15A-924(a)(5) (2021).

As for the indictment at issue here, defendant first contends that the crime of going armed to the terror of the public includes an element that the criminal conduct

occur on a public highway, and that the State's failure to allege this element deprived the trial court of jurisdiction. We disagree.

The General Assembly has provided that:

> All such parts of the common law as were heretofore in force and use within this State, or so much of the common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State and the form of government therein established, and which has not been otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete, are hereby declared to be in full force within this State.

N.C.G.S. § 4-1 (2021). In other words, "the common law [which] has not been abrogated or repealed by statute or become obsolete is in full force and effect in this state." *State v. Vance*, 328 N.C. 613, 617 (1991). "The 'common law' referred to in N.C.G.S. § 4-1 is the common law of England as of the date of the signing of the Declaration of Independence." *Id.* (citing *State v. Buckom*, 328 N.C. 313 (1991); *Hall v. Post*, 323 N.C. 259 (1988); *Steelman v. City of New Bern*, 279 N.C. 589 (1971)).

To determine whether the indictment in this case adequately charged defendant with going armed to the terror of the public, we must first identify the elements of the crime. Unlike crimes codified in our criminal statutes—the elements of which may be readily ascertained by a reading of the statutory text—the elements of common law crimes must be discerned through a reading of English common law and our precedent interpreting such. *See id.*

This Court's review of the common law crime of going armed to the terror of the public began nearly two centuries ago in *State v. Huntly*, 25 N.C. (3 Ired.) 418

-7-

(1843) (per curiam).[3]  In *Huntly*, the defendant was charged with the offense of "riding or going about armed with unusual and dangerous weapons, to the terror of the people."  *Id.* at 420.  The defendant argued that because this crime was created by the statute of Northampton, a 1328 English statute, and because English statutes were no longer in effect in North Carolina, the allegations in his indictment— including riding on a public highway with said weapons to the terror of the people— constituted no crime at all.  *Id.*

The statute of Northampton relied on by the defendant provided in relevant part that:

> [N]o man great nor small, of what condition soever he be, except the King's servants in his presence, and his ministers in executing the King's precepts, or of their office, and such as be in their company assisting them, . . . [shall] with force and arms, . . . go nor ride armed by night nor by day, in fairs, markets, nor in the presence of the justices or other ministers, nor in no part elsewhere, upon pain to forfeit their armour to the King, and their bodies to prison at the King's pleasure.

Statute of Northampton, 2 Edw. 3, ch. 3 (1328).

In rejecting the defendant's argument that this statute abrogated the common law crime of going armed to the terror of the public, this Court relied on *Sir John Knight's Case*, a 1686 English case in which the Chief Justice "declared . . . that the statute of Northampton was made in affirmance of the common law."  *Huntly*, 25 N.C.

---

[3] Citations and quotations to *State v. Huntly* herein reference the original James Iredell Reports, Volume III, published in 1843.

(3 Ired.) at 421; *see also Sir John Knight's Case*, 87 Eng. Rep. 75 (K.B. 1686). This Court thus determined that the statute of Northampton "did not *create* this offence, but provided only special penalties and modes of proceeding for its more effectual suppression." *Huntly*, 25 N.C. (3 Ired.) at 420. In so reasoning, this Court consulted Blackstone's Commentaries on the Laws of England:

> Blackstone states that "the offence of riding or going armed with dangerous or unusual weapons, is a crime against the public peace, by terrifying the good people of the land; and is *particularly* prohibited by the statute of Northampton, upon pain of forfeiture of the arms, and imprisonment during the King's pleasure."

*Id*. at 420–21 (citation omitted) (quoting 4 William Blackstone, Commentaries *149).

Having thus determined that this English common law crime remained in force despite the statute of Northampton, this Court then considered the argument that the crime diminished citizens' right to carry firearms, and it concluded with a succinct description of the crime itself:

> But although a gun is an "unusual weapon," it is to be remembered that the carrying of a gun *per se* constitutes no offence. For any lawful purpose—either of business or amusement—the citizen is at perfect liberty to carry his gun. It is the wicked purpose—and the mischievous result—which *essentially* constitute the crime. He shall not carry about this or any other weapon of death to terrify and alarm, and in such manner as naturally will terrify and alarm, a peaceful people.

*Id*. at 422–23 (second emphasis added).

Over one hundred years after *Huntly*, this Court again addressed the crime of going armed to the terror of the public in *State v. Dawson*, 272 N.C. 535 (1968). In

*Dawson*, four codefendants were charged with crimes stemming from their alleged conduct of firing gunshots into various homes, breaking and entering into homes, and defacing a home by painting "KKK" onto said property. *Id.* at 538–40. Among other offenses, the appealing defendant was charged with and convicted of "the common-law misdemeanor known as going armed with unusual and dangerous weapons to the terror of the people." *Id.* at 541.

In finding no error in the trial court's denial of defendant's motion to quash the indictment charging this crime, this Court recognized that *Huntly* "is still the law of North Carolina[,]" *id.* at 544, and stated that:

> The indictment . . . , although not as detailed and specific as the charge in *State v. Huntley* [sic], . . . is nevertheless sufficient. It charges all the essential elements of the crime, that is, that defendant (1) armed himself with unusual and dangerous weapons, to wit, pistols and rifles (2) for the unlawful purpose of terrorizing the people of Alamance County, and, (3) thus armed, he went about the public highways of the county (4) in a manner to cause terror to the people. While it would have been proper (as in *Huntley* [sic], *supra*) to enumerate acts or threats of violence committed by defendant while thus going armed, such specific averments are not required. Evidence of such acts, of course, was admissible as tending to prove the commission of the offense charged.

*Id.* at 549 (citations omitted).

Defendant contends that this language sets forth the elements of going armed to the terror of the public. However, the Court in *Dawson* was describing the specific evidentiary allegations contained in the defendant's indictment, not the general elements of the offense. The Court clearly stated earlier in the opinion that an

-10-

individual is not allowed "to arm himself in order to prowl the highways *or other public places* to the terror of the people*." Id*. (emphasis added). As the Court noted without limiting the offense to public highways, the crime of going armed to the terror of the public has broad application:

> In this day of social upheaval one can perceive only dimly the tragic consequences to the people if either night riders or daytime demonstrators, fanatically convinced of the righteousness of their cause, could legally arm themselves, mass, go abroad, and display their weapons for the purpose of imposing their will upon the people by terror. Such weapons—unconcealed and "ready to be used on every outbreak of ungovernable passion"—would endanger the whole community.

*Id*.

Defendant's reading of *Dawson* would not only require that the crime occur about a public highway, but also that the only weapons which would qualify to establish the crime are "pistols and rifles." Revolvers, shotguns, crossbows, flamethrowers, grenades, and other weapons would not qualify. In addition, such a reading would lead to an even more absurd result, that the crime could only occur in Alamance County. Just as one can commit the crime of going armed to the terror of the public while armed with unusual and dangerous weapons other than pistols and rifles, or in counties other than Alamance County, one can commit the crime in public locations other than highways. *See Dawson*, 272 N.C. at 549; *see also State v. Rambert*, 341 N.C. 173 (1995) (upholding conviction for going armed to the terror of the public and remanding for resentencing where crime occurred in a Piggly Wiggly

parking lot).

The evidentiary allegations in the *Dawson* indictment led the Court of Appeals in another case to incorrectly state that *Dawson* had

> Enumerated the four essential elements to charge the common law offense of intentionally going about armed with an unusual and dangerous weapon to the terror of the people, namely: (1) armed with unusual and dangerous weapons, (2) for the unlawful purpose of terrorizing the people of the named county, (3) by going about the public highways of the county, (4) in a manner to cause terror to the people.

*State v. Staten*, 32 N.C. App. 495, 496–97 (1977).

The Court of Appeals' majority below recognized that this Court in *Huntly* described the crime "without any reference that the defendant *must* have acted while on a 'public highway' to be subject to criminal liability." *Lancaster*, 284 N.C. App. at 468 (quoting *Huntly*, 25 N.C. (3 Ired.) at 421–22). In fact, the majority expressly recognized that "it has long been understood that" the crime of going armed to the terror of the public, like the similar common law crime of affray, "can occur in locations other than along a public highway." *Id.* at 469. Despite this, the majority understood that because this Court has never addressed the Court of Appeals' decision in *Staten*, the panel was bound to follow that decision. *Id.* at 470; *see also In re Civ. Penalty*, 324 N.C. 373, 384 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

We now take this opportunity to overrule *Staten* and clarify the elements of

the common law crime of going armed to the terror of the public. Although the Court of Appeals interpreted our decision in *Dawson* as imposing an "about a public highway" element, *see Staten*, 32 N.C. App. at 496–97, this interpretation conflates this Court's recitation of the particular evidentiary facts set forth in the *Dawson* indictment with a recitation of the elements of the crime in general.

The Court of Appeals' erroneous statement in *Staten*, and defendant's argument in reliance thereof, is not just a misreading of *Dawson*—it is contrary to both the English history of this common law crime and our decision in *Huntly* interpreting such. The statute of Northampton did not restrict punishment for the offense of going armed to the terror of the public to only those offenses committed "about a public highway." To the contrary, the statute specifically provided that punishment was applicable to those who were armed "in fairs, markets," and any other public location. Statute of Northampton, 2 Edw. 3, ch. 3.

It is therefore no surprise that Blackstone's Commentaries on the Laws of England also fails to mention any requirement that this crime be committed "about a public highway." *See* 4 William Blackstone, Commentaries *149–50 ("The offence of riding or going armed with dangerous or unusual weapons is a crime against the public peace, by terrifying the good people of the land . . . ." (emphasis omitted)).[4] As

---

[4] The fourth volume of Blackstone's Commentaries was published in 1769. *See* Wilfrid Prest, William Blackstone: Law and Letters in the Eighteenth Century 246 (2008). As there is no indication that the common law altered this crime between 1769 and 1776, Blackstone's description of the crime reflects "the common law of England as of the date of the signing of the Declaration of Independence." *Vance*, 328 N.C. at 617.

we stated in *Huntly*, "[i]t is the wicked purpose—and the mischievous result—which essentially constitute the crime." *Huntly*, 25 N.C. (3 Ired.) at 422–23.

Both the contemporary English history and our decision in *Huntly* confirm that the crime of going armed to the terror of the public does not require that the offensive conduct occur about a public highway. *See id.* at 423 ("[Defendant] shall not carry about this [gun] or any other weapon of death to terrify and alarm, and in such manner as naturally will terrify and alarm, a peaceful people."). Thus, the elements of the common law crime of going armed to the terror of the public are that the accused (1) went about armed with an unusual and dangerous weapon, (2) in a public place, (3) for the purpose of terrifying and alarming the peaceful people, and (4) in a manner which would naturally terrify and alarm the peaceful people.

With a proper understanding of the elements, we turn to defendant's arguments that the indictment charging him with going armed to the terror of the public was fatally deficient because it failed to allege the "unusual weapon" and "purpose" elements. Here, the indictment charged that on 30 September 2019, defendant "unlawfully, willfully and feloniously did go armed to the terror of the public by causing a disturbance and waving a firearm around in the parking lot of 326 McCotter Blvd Apartments, Havelock, North Carolina."

First, defendant contends that although "a firearm is a dangerous weapon, . . . there's nothing 'unusual' about a run-of-the-mill firearm." This argument is foreclosed by our precedent.

> It has been remarked, that a double-barrelled gun, or any other gun, cannot in this country come under the description of "unusual weapons," for there is scarcely a man in the community who does not own and occasionally use a gun of some sort. But we do not feel the force of this criticism. A gun is an "unusual weapon," wherewith to be armed and clad. . . . But although a gun is an "unusual weapon," it is to be remembered that the carrying of a gun *per se* constitutes no offence.

*Huntly*, 25 N.C. (3 Ired.) at 422–23. Thus, defendant's argument that a firearm does not constitute an unusual weapon is without merit.

Defendant next contends that the indictment was insufficient because it failed to allege that he "possessed the firearm for the 'purpose of terrorizing' the people of the named county." According to defendant, "simply possessing or waving a firearm doesn't automatically mean the specific 'purpose' of said possession or waving is to 'terrorize' the people of the named county."

However, "all that is required" for a sufficient indictment are "factual allegations *supporting* the elements of the crime charged," not "magic words" or a rote recitation of elements. *In re J.U.*, 384 N.C. at 624 (emphasis added). Here, both the element that defendant's conduct was done with the purpose of terrifying and alarming people, and the element that such conduct was done in a manner which would naturally terrify and alarm people, are "clearly inferable" from the allegations in the indictment that defendant caused a disturbance and waved a firearm around in the parking lot of an apartment complex. *See id.*

Defendant's attempt to compare these circumstances to a situation in which

an individual lawfully exercises their constitutional right by "simply possessing" a firearm is inapposite. *See Huntly*, 25 N.C. (3 Ired.) at 422–23. Defendant's argument on this point goes to proof at trial. Further, although one may be able to imagine circumstances under which "simply" waving a firearm is done without the purpose of terrorizing people, an indictment need only contain factual allegations which *support* the elements of the charged crime, not evidentiary allegations which conclusively establish the elements regarding an accused's mental state. *See* N.C.G.S. § 15A-924(a)(5) ("[Indictments must contain a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element . . . ."). Defendant's argument that the indictment was fatally deficient due to an omission of the "purpose" element is therefore without merit.

The indictment here adequately alleged facts supporting each element of the crime of going armed to the terror of the public. The indictment clearly appraised defendant of the conduct which was the subject of the accusation, *see* N.C.G.S. § 15A-924(a)(5), and provided "notice sufficient to prepare a defense and to protect against double jeopardy." *In re J.U.*, 384 N.C. at 623. Accordingly, there is no error in the indictment charging defendant with going armed to the terror of the public, and the decision of the Court of Appeals is reversed.

REVERSED.

Justice DIETZ did not participate in the consideration or decision of this case.