STATE OF NORTH CAROLINA, Plaintiff-Appellee v. THOMAS RICHARD JONES, Defendant-Appellant

No. COA98-429

(Filed 15 June 1999)

### 1. Homicide— felony murder—deadly weapon—not unconstitutionally vague

The lack of a specific definition of "deadly weapon" in the felony murder statute, N.C.G.S. § 14-17, did not make the statute unconstitutional in a case involving the deaths of two college students following a collision with an automobile driven by an impaired driver. The determinative inquiry is "the destructive capabilities of the weapon or device" and a deadly weapon has been defined by case law to include a variety of instruments, including automobiles.

### 2. Constitutional Law— ex post facto laws—application of felony murder to impaired driving

The application of the felony murder rule to a case involving the deaths of two college students following a collision with an automobile driven by an impaired driver did not violate the prohibition against ex post facto laws. The felony murder rule has existed in its present form since 1977 and automobiles have been recognized as deadly weapons in North Carolina since 1922. Although a felony perpetrated with an automobile has apparently not been used to support a felony murder conviction in the past, there is nothing to preclude its use for that purpose, nor does it expand the statute in any manner. Defendant can hardly complain that he was not on notice that he was taking serious risks and facing serious consequences when he continued to operate his automobile under the influence of drugs and alcohol.

### 3. Constitutional Law— equal protection—application of felony murder to impaired driving

The application of the felony murder rule to a case involving the deaths of two college students following a collision with an automobile driven by an impaired driver did not violate equal protection. Defendant did not state the suspect class to which he belongs that has been discriminated against and did not show which fundamental right will be affected. Stating that the felony murder rule would not be applied if there had not been multiple injuries does not make out a prima facie case for violation of the

Equal Protection Clause; it is not a violation of equal protection to punish a defendant more severely because more victims have been harmed.

**4. Homicide— felony murder—legislative intent**

Application of the felony murder rule to a prosecution which arose from the deaths of two college students after a collision with an automobile driven by an intoxicated driver did not violate legislative intent. The General Assembly modified the felony murder rule in 1977 and made it more specific, but did not exclude automobiles from the definition of "deadly weapons" even though automobiles had often been treated as "deadly weapons" prior to the amendment. Although the more specific statutes of felony and misdemeanor death by vehicle exist, they have not pre-empted all other statutes when a death occurs when a defendant has been driving while impaired. However, it was noted that this decision was grounded on the facts of this case.

**5. Evidence— prior crime or act—capital first-degree murder—impaired driving—other charges—conduct just before offense**

In a capital first-degree murder prosecution arising from the deaths of two college students in a collision with an automobile driven by defendant while he was impaired with alcohol and drugs, the trial court did not err by allowing evidence about a pending DWI charge, defendant's 1992 conviction for DWI, and evidence of defendant's conduct just before the offense, all of which were used to show malice.

**6. Homicide— felony murder—instructions—proximate cause of death**

The trial court did not err in a first-degree murder prosecution arising from an impaired driving collision by not giving defendant's requested instruction on felony murder that the State must prove that there was no other proximate cause of the death of the victim. It is sufficient if a defendant's culpable negligence is a proximate cause of the death.

**7. Homicide— culpable negligence—instructions—insulating negligence**

The trial court did not err in a first-degree murder prosecution arising from an impaired driving collision by not giving defendant's requested instruction on insulating negligence. Defendant was in the victim's lane of travel and she was forced to

STATE v. JONES

[133 N.C. App. 448 (1999)]

swerve into the left lane in an effort to avoid a collision; the argument that she should have swerved to the right and hit a telephone pole and mailbox is completely unpersuasive.

**8. Homicide— culpable negligence—instructions—driving on left half of roadway—exceeding posted speed**

The trial court did not err in a first-degree murder prosecution arising from an impaired driving collision in its instruction on culpable negligence. Our cases have held that an individual may be culpably or criminally negligent when traveling at excessive rates of speed or when driving on the wrong side of the road.

**9. Homicide— first-degree murder—sufficiency of evidence— impaired driving**

The trial court correctly denied a motion to dismiss a charge of first-degree murder arising from an impaired driving automobile collision.

**10. Criminal Law— jurisdiction of district court before indictments—production of medical records**

The district court had jurisdiction to enter orders for the production of defendant's medical records in a capital first-degree murder prosecution arising from an impaired driving collision where the order was entered before the indictments were returned. Jurisdiction is in the district court before a case is bound over to superior court or indictments returned. N.C.G.S. § 7A-272(b).

**11. Evidence— expert testimony—impaired driving—blood alcohol and drugs**

The trial court did not err in a first-degree murder prosecution arising from an impaired driving collision by allowing testimony from a doctor that defendant was appreciably impaired when his blood alcohol level reached .046 because the doctor was qualified as an expert in forensic toxicology and had examined a sample of defendant's blood, or testimony from another doctor about the effects of combining alcohol and Xanax. Any problems in the testimony go to its weight, not its admissibility.

**12. Homicide— felony murder—no merger of underlying felony**

The trial court did not err in a first-degree murder prosecution arising from an impaired driving collision by submitting

felony murder where defendant argued that the underlying felony of assault with a deadly weapon inflicting serious injury merged with the homicide.

Judge WYNN concurring in part and dissenting in part.

Appeal by defendant from judgments entered 6 May 1997 by Judge William H. Freeman in Forsyth County Superior Court. Heard in the Court of Appeals 7 January 1999.

The facts in this tragic case are largely undisputed. On 4 September 1996 at approximately 10:30 p.m., Thomas Richard Jones (defendant) crashed his automobile into an automobile driven by Margaret Penney (Margaret), a nineteen-year-old college student, killing two people and seriously injuring three others. Defendant was driving west on Polo Road, a two-lane thoroughfare in Winston-Salem, North Carolina, while Margaret was traveling east. As Margaret drove around a curve which preceded the "T" intersection of Polo Road and Brookwood Road, she saw two headlights approaching her in her lane of travel. Aline Iodice (Aline) also saw the two headlights and later testified that the headlights "were moving so quickly and [she] realized they were in [their] lane from the very first time [she] saw them until" the car collided with them.

Margaret lifted her foot from the accelerator pedal but could not pull the automobile off the road to the right because of the presence of a telephone pole and mailbox. Margaret tried to avoid a head-on collision with defendant by swerving into the left lane and turning onto Brookwood Road. Defendant, however, also swerved into his proper lane of travel and crashed into Margaret's automobile.

The collision killed Maia Witzl and Julie Marie Hansen, both nineteen-year-old college students who were passengers in Margaret's automobile, and injured Margaret. Melinda Warren, Aline, and Lea Billmeyer were also passengers in Margaret's automobile and were seriously injured. Defendant, however, suffered only minor injuries and was released from the hospital in less than twenty-four hours.

The crash investigation showed that defendant had been drinking alcohol and had a blood-alcohol content of .046. He had also taken the narcotic drugs Butalbital, Alprazolam (Xanax), and Oxycodone. Defendant was taking the prescription narcotics under the supervision of his doctor to alleviate pain from the medical conditions from

which he was suffering. At trial, an expert stated that this combination of narcotic painkillers impairs one's ability to drive an automobile as they can cause dizziness, confusion, and disorientation. The drugs may also decrease motor control, impair concentration and judgment, and diminish reaction time and perception.

Evidence in the record also shows that just a few minutes before the accident, defendant was involved in another automobile incident and engaged in reckless conduct. A mother and child were stopped at a red light at the intersection of University Parkway and North Point Boulevard. Defendant drove up behind their automobile and twice bumped into it, indicating that they should move out of the way even though the light was red. A witness testified that defendant yelled, "Get the f---k out of the way." When the light changed to green, defendant sped around the automobile in front of him and drove away at an excessive rate of speed.

The driver of the automobile which defendant had bumped followed him to obtain his license plate number and report him to the police. The driver saw that defendant continued to drive recklessly, including driving up onto the curb of the road. The driver eventually got the license plate number, called the police, and told them that defendant was "driving real crazy" and that "if somebody doesn't get him he's going to kill somebody." There was also evidence that defendant had been convicted of driving while impaired (DWI) in 1992 and was awaiting trial on another pending DWI charge.

In April of 1997, defendant was tried capitally before a jury. The jury returned the following verdicts: (1) guilty of assault with a deadly weapon inflicting serious injury on Aline; (2) guilty of assault with a deadly weapon inflicting serious injury on Melinda Warren; (3) guilty of assault with a deadly weapon on Margaret; (4) guilty of assault with a deadly weapon inflicting serious injury on Lea Billmeyer; (5) guilty of driving while impaired; (6) guilty of first-degree murder of Maia Witzl under the felony murder rule; and (7) guilty of first-degree murder of Julie Hansen under the felony murder rule.

The jury recommended that defendant be sentenced to life without parole for the deaths of Maia Witzl and Julie Hansen. The trial court sentenced defendant to life without parole and arrested judgment on the three convictions for assault with a deadly weapon inflicting serious injury. The trial court also sentenced defendant to 120 days' imprisonment for assault with a deadly weapon on

Margaret and to 90 days' imprisonment for driving while impaired. Defendant appealed.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, and Assistant Attorney General Jonathan P. Babb, for the State.*

*White and Crumpler, by David B. Freedman, Dudley A. Witt, and Laurie A. Schlossberg; and Teeter Law Firm by Carroll L. Teeter, for defendant appellant.*

HORTON, Judge.

In 1893 our General Assembly codified the common law offense of murder and divided it into first and second degrees. *State v. Davis*, 305 N.C. 400, 422, 290 S.E.2d 574, 588 (1982). The killings considered to be the most heinous were classified as first-degree murder and then subdivided into three classes: "(1) murders perpetrated by means of poison, lying in wait, imprisonment, starving, or torture, (2) premeditated murder, and (3) killings occurring in the commission of" any arson, rape, robbery, burglary, or other felony. *Id.* at 423, 290 S.E.2d at 588. This third class of first-degree murder is commonly referred to as felony murder.

In 1977, the General Assembly amended the definition of felony murder to its present form. It is now defined as a killing "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon . . . ." N.C. Gen. Stat. § 14-17 (Cum. Supp. 1998). Therefore, for a defendant to be found guilty of felony murder, the State must prove that another person was killed while defendant was committing or attempting to commit any felony in which a deadly weapon was involved. *State v. Gibbs*, 335 N.C. 1, 51, 436 S.E.2d 321, 350 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). In the instant case, the defendant was charged with the underlying felony of assault with a deadly weapon inflicting serious injury, which is comprised of the following elements: (1) an assault; (2) with a deadly weapon; (3) inflicting serious injury; and (4) not resulting in death. N.C. Gen. Stat. § 14-32(b) (1993).

An assault is defined as an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to another person. *State v. Roberts*, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967). This show of force or vio-

lence must be sufficient to place a person of reasonable firmness in fear of immediate bodily harm. *Id.* A deadly weapon has been defined by our Supreme Court as any " 'article, instrument or substance which is likely to produce death or great bodily harm.' " *State v. Torain*, 316 N.C. 111, 120, 340 S.E.2d 465, 470 (quoting *State v. Sturdivant*, 304 N.C. 293, 301, 283 S.E.2d 719, 725 (1981)), *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). An automobile which is driven in a dangerous manner can be a deadly weapon. *See State v. Sudderth*, 184 N.C. 753, 755, 114 S.E. 828, 829-30 (1922); *State v. Eason*, 242 N.C. 59, 65, 86 S.E.2d 774, 778 (1955); *State v. McBride*, 118 N.C. App. 316, 318-19, 454 S.E.2d 840, 841-42 (1995).

A driver who operates an automobile in such a manner that it is a deadly weapon can be convicted of the felony of assault with a deadly weapon inflicting serious injury if the driver has either "(1) an actual intent to inflict injury, or (2) [commits a] culpabl[y] or criminal[ly] negligen[t] [act] from which such intent may be implied." *Eason*, 242 N.C. at 65, 86 S.E.2d at 778. Culpable or criminal negligence, in turn, has been defined as "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *State v. Cope*, 204 N.C. 28, 30, 167 S.E. 456, 458 (1933). In *State v. Hancock*, 248 N.C. 432, 435, 103 S.E.2d 491, 494 (1958), our Supreme Court stated that "[t]he violation of a safety statute which results in injury or death will constitute culpable negligence if the violation is wilful, wanton, or intentional." If, however, the statute is unintentionally or inadvertently violated, culpable negligence exists if the violation is "accompanied by recklessness of probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, amounting altogether to a thoughtless disregard of consequences or of a heedless indifference to the safety of others." *Id.*

In this case, all the elements to sustain a conviction of first-degree murder by application of the felony murder rule are present. Two people were killed while defendant was perpetrating the felony of assault with a deadly weapon inflicting serious injury. Defendant committed the assault with his automobile by driving it in a reckless manner, oblivious to the safety of others. Although the evidence supports defendant's conviction for felony murder because the elements of the underlying felony were met, defendant nonetheless contends that his conviction should be overturned because: (I) the felony murder statute is unconstitutionally vague in that it does not define

"deadly weapon"; (II) application of the felony murder rule against defendant is an *ex post facto* violation; and (III) defendant's conviction is a violation of the Equal Protection Clause. We disagree with defendant on all of these contentions and with (IV) the dissent's opinion that it was not the legislature's intent for the felony murder rule to apply to the facts of this case.

Defendant also presents the following evidentiary and instructional error arguments: (V) that the trial court erred in allowing the State to introduce evidence of a pending DWI charge, a 1992 conviction for DWI, and evidence of defendant's driving prior to the offense in question; (VI) that the trial court (A) erred in failing to instruct the jury about proximate cause and insulating acts of negligence, and (B) should not have instructed the jury that driving left of the center line and exceeding the speed limit were culpable negligence; (VII) the trial court erred in denying defendant's motion to dismiss at the close of all the evidence; (VIII) the district courts were without jurisdiction to enter orders to allow the State access to defendant's medical orders and these orders allowed the State improper *ex parte* contact with defendant's physicians; (IX) the trial court erred in allowing testimony by Dr. Mason in giving his opinion about defendant's level of impairment and by Dr. Stuart about the effects of barbiturates on the human body; and (X) the trial court erred in submitting the felony murder charges because the underlying felonies of assault with a deadly weapon inflicting serious injury merged with the offense of felony murder.

I

[1] Defendant first contends that the failure of North Carolina's General Assembly to define the term "deadly weapon" in N.C. Gen. Stat. § 14-17 necessarily results in the statute being unconstitutionally vague as applied to this defendant. We disagree.

It is well settled in North Carolina that a statute may be void for vagueness and uncertainty. " 'A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' " *State v. Green*, 348 N.C. 588, 597, 502 S.E.2d 819, 824 (1998) (citations omitted), *cert. denied*, 525 U.S.1111, 142 L. Ed. 2d 783 (1999). A deadly weapon, however, has been defined by our case law to include a variety of different instruments, including automobiles. As we stated earlier, a "deadly weapon is *any* article, instrument, or substance that is

likely to produce great bodily harm or death." *State v. Hales*, 344 N.C. 419, 426, 474 S.E.2d 328, 332 (1996) (emphasis added).

A variety of items have been held to be deadly weapons. *See State v. Lang*, 309 N.C. 512, 527, 308 S.E.2d 317, 325 (1983) (hands, fists or feet can be deadly weapons); *State v. Joyner*, 295 N.C. 55, 64-65, 243 S.E.2d 367, 373-74 (1978) (Pepsi-Cola bottle could be deadly weapon); *State v. Strickland*, 290 N.C. 169, 178, 225 S.E.2d 531, 538 (1976) (plastic bag can be a deadly weapon). The determinative inquiry is "the destructive capabilities of the weapon or device." *State v. Moose*, 310 N.C. 482, 497, 313 S.E.2d 507, 517 (1984). Indeed, this Court has specifically held that an automobile can be a deadly weapon within the meaning of the felony of assault with a deadly weapon. *Eason*, 242 N.C. at 65, 86 S.E.2d at 778. Because North Carolina cases provide adequate notice of what constitutes a deadly weapon, defendant has not been deprived of due process. His argument, therefore, that the lack of a specific definition of "deadly weapon" necessarily makes the felony murder statute unconstitutional in this case, is unpersuasive.

II

**[2]** Defendant next contends that the application of the felony murder rule in this case would violate the prohibition against *ex post facto* laws. We disagree.

Both the North Carolina and United States Constitutions forbid the enactment of *ex post facto* laws. U.S. Const. art. I, § 10; N.C. Const. art. I, § 16. From the beginning of American jurisprudence, the United States Supreme Court has defined an *ex post facto* law to be a law that "(1) makes an action criminal which was done before the passing of the law and which was innocent when done, (2) aggravates a crime or makes it greater than when it was committed, (3) allows imposition of a different or greater punishment than was permitted when the crime was committed, or (4) alters the legal rules of evidence to permit different or less testimony to convict the offender than was required at the time the offense was committed." *State v. Vance*, 328 N.C. 613, 620, 403 S.E.2d 495, 500 (1991). *See also Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648, 650 (1798). In other words, in order for a criminal law to be an *ex post facto* violation, it must be both retrospective by applying to events which occurred " 'before its enactment, and it must disadvantage the offender affected by it.' " *Id.* (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 67 L. Ed. 2d 17, 23 (1981)).

STATE v. JONES

[133 N.C. App. 448 (1999)]

Although *ex post facto* laws have traditionally been directed specifically at legislative actions, the United States Supreme Court has held that the Fifth and Fourteenth Amendments to the U.S. Constitution "forbid retroactive application of an unforeseeable judicial modification of criminal law, to the disadvantage of the defendant." *Id.* In this case, however, there is no judicial modification of any criminal law. The felony murder rule has existed in its present form since 1977 and automobiles were treated as deadly weapons well before the date of the offense in this case. Although a felony perpetrated by an automobile has apparently not been used to support a felony murder conviction in the past, there is nothing to preclude its use for that purpose, nor does it expand the statute in any manner. Indeed, our Supreme Court has allowed human hands to be considered as deadly weapons to sustain an underlying felony in order to convict a defendant of felony murder. *See State v. Pierce*, 346 N.C. 471, 493, 488 S.E.2d 576, 589 (1997). We therefore hold this argument to be unpersuasive.

Defendant argues that he was not fairly placed on notice that his conduct might result in a capital prosecution under the felony murder rule. Prior to this tragic incident, defendant had been convicted of driving while impaired on an earlier occasion. Further, about a month before this incident, defendant, while under the influence of drugs and alcohol, drove his automobile into the opposite lane, and ran another motorist off the road. Defendant was awaiting trial for that second incident at the time of the collision in this case.

An automobile has been recognized as a deadly weapon in North Carolina since 1922. *See Sudderth*, 184 N.C. 753, 114 S.E. 828. At least since 1925 motorists have been prosecuted for murder arising out of automobile accidents caused by their operation of their vehicles while under the influence. *See State v. Trott*, 190 N.C. 674, 130 S.E. 627 (1925), in which both the owner and the operator of an automobile were jointly indicted for first-degree murder and convicted of second-degree murder arising out of the tragic death of a fifteen-year-old girl in a traffic accident. Both defendants were under the influence of alcohol at the time of the accident. The driver did not appeal the conviction; the owner's conviction was affirmed by our Supreme Court. *Id.* In recent years, defendants have been frequently prosecuted and convicted of second-degree murder arising out of automobile accidents. *See, e.g., State v. Snyder*, 311 N.C. 391, 317 S.E.2d 394 (1984); *State v. Byers*, 105 N.C. App. 377, 413 S.E.2d 586 (1992); *State v. McBride*, 109 N.C. App. 64, 425 S.E.2d 731 (1993). Defendant in the

case before us can hardly complain that he was not on notice that he was taking serious risks—and facing serious consequences—when he continued to operate his automobile under the influence of drugs and alcohol. This assignment of error is overruled.

### III

**[3]** Defendant next contends that the application of the felony murder rule to him violates his right to equal protection under the law. We again disagree.

The Equal Protection Clause of both the U.S. and North Carolina Constitutions requires that all persons similarly situated be treated in the same manner. *Richardson v. N.C. Dept. of Correction*, 345 N.C. 128, 134, 478 S.E.2d 501, 505 (1996). "If the statute does not impact upon a suspect class or a fundamental right, it is necessary to show only that the classification created by the statute bears a rational relationship to some legitimate state interest." *Id.*

In this case, defendant does not state the suspect class to which he belongs that has been discriminated against, nor does he show us which fundamental right will be affected. He merely contends that, if a similar accident had occurred and there were not multiple injuries, the felony murder rule could not be applied. This argument is unpersuasive in that it does not make out a *prima facie* case for a violation of the Equal Protection Clause, *see Green*, 348 N.C. at 602, 502 S.E.2d at 827, and because it is not a violation of the Equal Protection Clause to punish a defendant more severely because more victims have been harmed. *See* N.C. Gen. Stat. §§ 15A-1340.16(d)(8) and 15A-2000(e)(11) (1997). This assignment of error is accordingly overruled.

### IV

**[4]** We next address an issue not specifically discussed by defendant in his brief, but clearly presented by the dissent. The dissent states that our legislature did not intend for the felony murder rule to be used in situations such as the present one. Specifically, the dissent opines that when the General Assembly modified the felony murder rule in 1977 and defined it as a killing "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon[,]" N.C. Gen. Stat. § 14-17, it limited the coverage of the rule by limiting the felonies which would sustain a felony murder charge.

Although we agree that the General Assembly did make the rule more specific as to the type of underlying felony necessary to sustain a felony murder conviction, it specifically denoted felonies perpetrated with the use of a "deadly weapon." As discussed above, a variety of items have been held to be deadly weapons within the meaning of the statute. *See, e.g., Pierce*, 346 N.C. at 493, 488 S.E.2d at 589. Indeed, the General Assembly did not exclude automobiles from the definition of "deadly weapons" in this statute, although automobiles had often been treated as "deadly weapons" prior to the 1977 amendment.

The dissent further supports its conclusion by stating that when a specific statute addresses an issue, that specific statute prevails over a more general statute, " 'unless it clearly appears that the General Assembly intended to make the general act controlling in regard thereto . . . .' " *Utilities Comm. v. Electric Membership Corp.*, 3 N.C. App. 309, 314, 164 S.E.2d 889, 892 (1968) (citation omitted). Indeed, in *State v. Beale*, 324 N.C. 87, 376 S.E.2d 1 (1989), our Supreme Court did apply a more specific statute dealing with abortion and similar offenses rather than the felony murder rule.

This idea that the felony murder rule cannot be used in this context because the General Assembly has enacted the more specific statutes of felony death by vehicle and misdemeanor death by vehicle (N.C. Gen. Stat §§ 20-141.4(a1) and 20-141.4(a2) (1993)), however, is not well grounded. Although these statutes do exist, they have not preempted all other statutes when a death occurs when a defendant has been driving while impaired. Indeed, there is abundant case law to support convictions for second-degree murder and involuntary manslaughter in DWI cases, even after the enactment of the felony and misdemeanor death by vehicle statutes. *See, e.g., State v. Grice*, 131 N.C. App. 48, 505 S.E.2d 166 (1998), *disc. review denied*, 350 N.C. 102, —— S.E.2d —— (1999); *McBride*, 109 N.C. App. 64, 425 S.E.2d 731; *Byers*, 105 N.C. App. 377, 413 S.E.2d 586. Logically, therefore, there is no reason why the felony murder statute cannot be used in this context if an underlying felony was also committed.

Despite our conclusion, we are mindful of the core concern expressed in the dissent. We perceive that our duty as an intermediate appellate court is to apply existing law to the facts of the case before us, and that duty inevitably compels the result we reach here. Novel or imaginative uses of existing statutes and case law are the stock in trade of capable attorneys, and a prosecutor may properly weigh the harm resulting from a defendant's actions in determining

the charges he will pursue against a defendant. Such an evaluation undoubtedly took place here. Few traffic fatalities involve actions as flagrant as those before us. We expect district attorneys to continue to be mindful of the gravity of first-degree murder prosecutions in such cases. Both the verdict and sentence imposed are appropriate under the facts of this case, and our decision is grounded on those facts. This assignment of error is overruled.

V

**[5]** We now turn to defendant's assignments of error concerning instructional and evidentiary errors. Defendant contends that the trial court should not have allowed evidence about a pending DWI charge, defendant's 1992 conviction for DWI, and evidence of defendant's conduct just before the offense in question. We disagree with defendant on all of these arguments.

Rule 404(b) of the North Carolina Rules of Evidence allows evidence of other crimes, wrongs, or acts by a defendant if it is used to show a mental state such as malice. *Byers*, 105 N.C. App. at 383, 413 S.E.2d at 589. Evidence of other crimes, wrongs, or bad acts cannot, however, be used to prove a defendant's propensity to commit a crime. *Id.*

In this case, evidence of defendant's pending DWI charge and his 1992 conviction for DWI was used to show that defendant had the requisite mental state of malice, one of the elements of the charge of second-degree murder which was submitted to the jury. The trial court did not abuse its discretion in that the danger of undue prejudice did not outweigh any probative value of the evidence. Furthermore, evidence of defendant's conduct immediately prior to the offense in question was also properly admitted. Defendant bumped another automobile stopped at a traffic light, yelled obscenities and then sped off without acknowledging any damage which occurred. This evidence tended to show malice on the part of defendant and was proper under Rule 404(b).

VI

Defendant next contends that the trial court (A) erred in failing to instruct the jury about proximate cause and insulating acts of negligence and (B) should not have instructed the jury that driving left of the center line and exceeding the speed limit were culpable negligence. We disagree with these arguments.

A

**[6]** Defendant argues that the trial court should have instructed the jury that in order to find him guilty of first-degree felony murder, the jury must find that "the defendant's actions were the sole and only proximate cause of the death of the victim. The State must prove that there was no other proximate cause of the death of the victim." Although the trial court must give an instruction to the jury if the requested instruction is correct in itself and is supported by evidence, *see State v. Harvell*, 334 N.C. 356, 364, 432 S.E.2d 125, 129 (1993), the requested instruction in this case was not correct. If a defendant's culpable negligence is "*a*" proximate cause of the death, that is sufficient to find him criminally liable. *State v. Hollingsworth*, 77 N.C. App. 36, 39, 334 S.E.2d 463, 465 (1985). Indeed, there may be more than one proximate cause, but criminal responsibility arises when the offense committed is one of the proximate causes. *Id.* As a result, defendant's requested instruction was a misstatement of the law and did not have to be given to the jury.

**[7]** As to the instruction for insulating acts of negligence, the trial court was correct in not submitting the charge. "In order for [the] negligence of another to insulate defendant from criminal liability, that negligence must be such as to break the causal chain of defendant's negligence; otherwise, defendant's culpable negligence remains *a* proximate cause, sufficient to find him criminally liable." *Id.* In this case, there was no evidence of any negligence on the part of Margaret while driving her automobile. Defendant was in her lane of travel and she was forced to swerve into the left lane in an effort to avoid a collision. Defendant's argument that Margaret should have swerved to the right and hit a telephone pole and mailbox is completely unpersuasive and is, accordingly, overruled.

B

**[8]** The trial court gave the jury the following instruction on culpable negligence.

> Under the law of this state, culpable negligence is such recklessness or carelessness proximately resulting in injury or death as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others. An intentional, willful or wanton violation of the statute designed for the protection of human life or limb which proximately results in injury or death such as driving on the left half of the roadway or exceeding the posted speed limit is culpable negligence.

Where there is an unintentional or inadvertent violation of the law, such violation standing alone does not constitute culpable negligence. To constitute culpable negligence, the inadvertent or unintentional violation of the law must be accompanied by recklessness of probable consequences of a dangerous nature when tested by the rule of reasonable foresight amounting all together to a thoughtless disregard of consequences or heedless indifference to the safety of others.

This language of the instruction tracks the language set forth by the Supreme Court in *State v. Sealy*, 253 N.C. 802, 804, 117 S.E.2d 793, 795 (1961) and was correct. Defendant complains that the trial court mischaracterized the law when it stated that "driving on the left half of the roadway or exceeding the posted speed limit is culpable negligence." This argument, however, is without merit. Our cases have held that an individual may be culpably or criminally negligent when traveling at excessive rates of speed. *See, e.g., State v. Wilson*, 218 N.C. 769, 12 S.E.2d 654 (1941); *State v. Steelman*, 228 N.C. 634, 46 S.E.2d 845 (1948); *State v. Floyd*, 15 N.C. App. 438, 190 S.E.2d 353, *cert. denied*, 281 N.C. 760, 191 S.E.2d 363 (1972); *State v. Grissom*, 17 N.C. App. 374, 194 S.E.2d 227, *cert. denied*, 283 N.C. 258, 195 S.E.2d 691 (1973). Our cases have also held that driving on the wrong side of the road can be culpable negligence. *See State v. Hefler*, 60 N.C. App. 466, 299 S.E.2d 456 (1983), *aff'd*, 310 N.C. 135, 310 S.E.2d 310 (1984); *State v. Atkins*, 58 N.C. App. 146, 292 S.E.2d 744, *appeal dismissed and disc. review denied*, 306 N.C. 744, 295 S.E.2d 480 (1982).

## VII

[9] A trial court correctly denies a motion to dismiss at the close of all the evidence if there is substantial evidence to support each essential element of the offense charged and that defendant committed the offense. *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Morgan*, 111 N.C. App. 662, 664-65, 432 S.E.2d 877, 879 (1993). The trial court must examine the evidence in the light most favorable to the State and the State is entitled to every reasonable inference which can be drawn from the evidence. *Id.* In this case, there was substantial evidence to warrant submission of the charges to the jury and the trial court did not err in denying the motion to dismiss.

## VIII

**[10]** Defendant's next argument concerns orders entered by the district court for the production of his medical records for the State. Although the case law prohibits *ex parte* communications with a party's health care provider in civil cases absent the party-patient's express consent, *see Crist v. Moffatt*, 326 N.C. 326, 389 S.E.2d 41 (1990), defendant has cited no authority to extend this rule to criminal defendants. Furthermore, there is no indication in the record that defendant objected to the orders at trial or moved to suppress the information. As a result, any error which occurred has been waived by defendant. N.C.R. App. P. 10(b)(1).

Defendant's contention that the district court judges who signed two of the orders lacked jurisdiction because the case was to be tried in superior court is likewise without merit. N.C. Gen. Stat. § 7A-272(b) (Cum. Supp. 1997) states that a "district court has jurisdiction to conduct preliminary examinations and to bind the accused over for trial upon waiver of preliminary examination or upon a finding of probable cause . . . ." Until a case is "bound over" to the superior court, or indictments are returned by the Grand Jury, jurisdiction is in the district court. In this case, the two orders signed by the district court were entered on 6 September 1996 and 20 September 1996, while the first indictments against defendant were not returned until 21 October 1996. Since the indictments had not been returned, nor the cases bound over to the superior court when the orders in question were signed, the district court retained jurisdiction of these preliminary matters.

## IX

**[11]** Defendant next argues that the trial court erred in admitting testimony of two of the State's expert witnesses. Again, we disagree with defendant's contentions and hold that the trial court was correct in allowing the testimony.

Rule 702 of the Rules of Evidence will allow an expert witness to testify to a scientific opinion if it will "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." N.C. Gen. Stat. § 8C-1, Rule 702 (Cum. Supp. 1997). In this case, defendant objects to testimony by Dr. Mason that, in his opinion, defendant was appreciably impaired when his blood alcohol level reached .046. This testimony, however, was appropriately admitted because Dr. Mason was qualified as an expert in the field of forensic toxicology and had

examined a sample of defendant's blood and therefore could give his opinion as to the effects of the various impairing substances in defendant's body.

This same rationale applies to the testimony of Dr. Stuart. Dr. Stuart was accepted by the trial court as an expert in trauma surgery and medicine. Defendant contends that Dr. Stuart should not have been allowed to testify about the effects of combining alcohol and Xanax because it was outside of his field of knowledge. We reject this argument, however, because in North Carolina, "the opinion testimony of an expert witness is competent if there is evidence to show that, through study or experience, or both, the witness has acquired such skill that he is better qualified than the jury to form an opinion on the particular subject of his testimony." *Maloney v. Hospital Systems*, 45 N.C. App. 172, 177, 262 S.E.2d 680, 683, *disc. review denied*, 300 N.C. 375, 267 S.E.2d 676 (1980). In this case, Dr. Stuart was an expert in the field of medicine and was better qualified than the jury to offer an opinion about the effects of combining alcohol and Xanax. Any problems in the testimony go to the weight it is given by the jury, not to its admissibility.

X

**[12]** In his final argument, defendant contends that the trial court erred in submitting the felony murder charge because the underlying felony of assault with a deadly weapon inflicting serious injury merged with the homicide. Specifically, defendant is asking this Court to reexamine our Supreme Court's holding in *State v. Abraham*, 338 N.C. 315, 451 S.E.2d 131 (1994), and hold that the offenses must be merged if the victims are different persons. This Court is bound by the decisions of our Supreme Court, and therefore we are unable to accept defendant's argument. *See State v. Coria*, 131 N.C. App. 449, 508 S.E.2d 1 (1998).

In conclusion, we hold that no prejudicial error was committed at defendant's trial. We are aware that the felony murder rule has been criticized in some jurisdictions, and we understand the dissent's concern that harsh results could result from the application of the felony murder rule to other fatal automobile accidents regardless of the circumstances surrounding them. We are bound, however, by the plain language of the statute and earlier appellate decisions, and do not find on the facts of this case that application of the felony murder rule resulted in a fundamentally unfair result. Any modifications of N.C. Gen. Stat. § 14-17 to yield a different result in situations similar

to the hypothetical case set out in the dissent must be left to our General Assembly.

No error.

Judge EDMUNDS concurs.

Judge WYNN concurs in part and dissents in part with separate opinion.

Judge WYNN concurring in part and dissenting in part.

If this Court could render a decision which solely addressed the issue of whether defendant Thomas Richard Jones could lawfully be subjected to possible capital punishment for causing death and serious injury while driving in a dangerously intoxicated manner, I would be more inclined to join in the majority opinion. This Court, however, cannot look at this case and its concomitant issues in such a discrete vacuum. Rather, as an appellate court we must view this case in a broader light, understanding that we cannot remain blind to the legal and societal ramifications of our decision. Ultimately, we must remain cognizant of the fact that our pronouncements transcend the rights and duties of the immediate parties by creating precedent binding upon every citizen of this State.

Examining the case *sub judice* under this time-tested foresight elucidates the fact that our decision concerns and affects not only intoxicated motorists, but also every North Carolina vehicular driver who utilizes our highways. Indeed, under the majority opinion, any motorist in North Carolina whose culpable negligence[1] results in an accident causing at least one death and one serious injury is now potentially subject to the death penalty[2]. This holding has significant implications because North Carolina jurisprudence holds that a motorist can be found culpably negligent if he exceeds the posted

---

1. Under *State v. Eason*, 242 N.C. 59, 65, 86 S.E.2d 774, 778 (1955), a driver charged with assault with a deadly weapon must have a *mens rea* requirement of at least culpable negligence to be lawfully convicted of that crime. Accordingly, I will analyze this issue with respect to that *mens rea* requirement.

2. The majority opinion holds that a culpably negligent motorist whose conduct results in at least one death and one serious injury can be lawfully prosecuted for felony murder. Under our statutory framework, an individual convicted of felony murder must be sentenced to death or life imprisonment.

speed limit or fails to keep a reasonable lookout[3]. *See e.g. Ingle v. Roy Stone Transfer Corp.*, 271 N.C. 276, 284, 156 S.E.2d 265, 272 (1967) (stating that failing to keep a reasonable lookout coupled with dangerous speed constitutes reckless driving); *State v. Grissom*, 17 N.C. App. 374, 375, 194 S.E.2d 227, 228 (holding that excessive speed can constitute reckless driving), *disc. rev. denied*, 283 N.C. 258, 195 S.E.2d 691 (1973). That is, the majority has failed to draw a bright line between an intoxicated, reckless driver whose unlawful conduct results in death or serious injury and any other driver who does little more than violate this State's traffic rules and regulations. In so doing, the majority has enveloped this State with a unique and draconian form of criminal liability.

Further, the majority opinion represents the first time that any court in this nation has determined it appropriate to subject a culpably negligent motorist to the death penalty. *See Langford v. State*, 354 So.2d 313, 315-16 (Ala. 1977) ("no case has been cited, or found, wherein an . . . automobile driver was found guilty of murder in the first degree"). Indeed, such a law is noticeably absent from this State or any other state's criminal law.

In my opinion, if North Carolina desires to undertake such a far-reaching extension of its criminal law, it should do so through the legislative functions assigned to our General Assembly,[4] not through a

---

3. Although the cases holding this involve persons convicted of reckless driving, they are equally applicable to our analysis given that "[t]he language in each section of the reckless driving statute defines culpable negligence." *Ingle v. Roy Stone Transfer Corp.*, 271 N.C. 276, 284, 156 S.E.2d 265, 271 (1967). (citations omitted).

4. In fact, our General Assembly has already contemplated situations similar to the one in the case *sub judice* and has legislated appropriate sanctions. Specifically, our General Assembly passed N.C. Gen. Stat. § 20-141.4 entitled "Felony and Misdemeanor Death By Vehicle" which provides in pertinent part,

(a1) Felony Death by Vehicle—A person commits the offense of felony death by vehicle if he unintentionally causes the death of another person while engaged in the offense of impaired driving . . . .

(a2) Misdemeanor Death by Vehicle—A person commits the offense of misdemeanor death by vehicle if he unintentionally causes the death of another person while engaged in the violation of any State law or local ordinance applying to the operation or use of a vehicle or to the regulation of traffic, other than impaired driving . . . .

N.C. Gen. Stat. § 20-141.4 (1993). Significantly, the sanctions associated with these crimes are substantially less draconian than the capital trial the defendant faced. That is, the General Assembly has demonstrated its belief that the conduct undertaken by the defendant, though egregious and deserving of sanction, does not warrant the severity of sanctions concomitant with felony-murder prosecution.

clever prosecutor and the majority panel of two judges on this Court. Nonetheless, the majority opinion arrogates the legislative function and usurps powers the Constitution ordained to ordinary political processes. Unfortunately, this arrogation adds vitality to the familiar charge that the "imperial judiciary" has overstepped its bounds and impermissibly intruded upon matters that our Founding Fathers intended to be left to the democratic process. *See* Francis J. Larkin, *The Variousness, Virulence, and Variety of Threats to Judicial Independence*, 36 NO. 1 Judges' J. 4 (1997).

With the preceding principles in mind, I examine two compelling arguments the defendant presents which challenge the validity of applying the felony-murder rule to a culpably negligent driver. First, I will address the defendant's contention that the State violated his due process rights by applying the felony-murder rule without meeting the constitutional requisite of fair notice. Thereafter, I will analyze the defendant's argument that the felony-murder rule was improperly utilized because the General Assembly neither contemplated nor intended that it be applied to a culpably negligent driver.

## I.

The defendant first contends that the State's novel and unforeseen application of the felony-murder rule operated as a quasi-*ex post facto* law in violation of his due process rights. Specifically, the defendant argues that the State failed to meet its constitutional mandate of providing him with fair notice that his conduct subjected him to the felony-murder rule and its stringent penalties.

Before endeavoring to analyze this issue, I must clarify a distinction of substantial import to the defendant's due process argument. The defendant has not contended, nor am I insinuating, that the State failed to provide him with fair notice that his egregious conduct subjected him to a murder conviction. Indeed, the defendant's brief specifically states that "[a]t the time [the defendant] committed the offense, the law that was in place would have permitted conviction of involuntary manslaughter or even second degree murder." Therefore, the issue before us is not whether the defendant, or for that matter any other reckless driver, was provided fair notice that his conduct subjected him to a murder conviction, but rather whether he was provided fair notice that his conduct subjected him to the felony-murder rule and the potential death sentence associated with it.

North Carolina's felony-murder rule, set forth in N.C. Gen. Stat. § 14-17 (Supp. 1996), provides in pertinent part:

A murder . . . which shall be committed in the perpetration or attempted perpetration of any arson, rape, or a sex offense, robbery, kidnapping, or burglary, *or other felony committed or attempted with the use of a deadly weapon* shall be deemed to be murder in the first degree, a Class A felony, and any person who commits such murder shall be punished with death or imprisonment in the State's prison for life . . . .

(Emphasis added.) Accordingly, an individual can be convicted under the felony-murder rule if a killing occurred during the commission of a felony committed with the use of a deadly weapon. N.C. Gen. Stat. § 14-17; *State v. Davis*, 305 N.C. 400, 423-24, 290 S.E.2d 574, 588 (1982).

In the case *sub judice*, the defendant was charged with the underlying felony of assault with a deadly weapon inflicting serious injury under N.C. Gen. Stat. § 14-32(b) (1993). The elements of that crime are (1) an assault, (2) with a deadly weapon, (3) inflicting serious injury, and (4) not resulting in death. *See* N.C. Gen. Stat. § 14-32(b); *State v. Woods*, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997).

Although there is no statutory definition of assault, our Supreme Court has defined it as "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *State v. Roberts*, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967). With respect to the *mens rea* or criminal intent requirement for assault, I note there is conflict among our jurisprudence. Indeed, while this Court stated in *State v. Currie*, 19 N.C. App. 17, 20, 198 S.E.2d 28, 30 (1973), that "[i]ntent is not an element of . . . assault with a deadly weapon," it also stated in *State v. Coffey*, 43 N.C. App. 541, 543, 259 S.E.2d 356, 357 (1979) (citations omitted), that "intent is an essential element of the crime of assault." Because it is undisputed that the defendant had the requisite *mens rea*, I need not confront this discrepancy.

Proceeding, "[a] deadly weapon is any article, instrument, or substance that is likely to produce great bodily harm or death." *State v. Hales*, 344 N.C. 419, 426, 474 S.E.2d 328, 332 (1996). The focus of the inquiry is upon "the destructive capabilities of the weapon or device" and the "circumstances of its use." *See State v. McBride*, 118 N.C. App. 316, 318, 454 S.E.2d 840, 841-42 (1995). It is well settled that a motor vehicle, if used in a dangerous or reckless manner, can consti-

tute a deadly weapon. *Eason,* 242 N.C. at 65, 86 S.E.2d at 778; *State v. Sudderth,* 184 N.C. 753, 755, 114 S.E. 828, 829-30 (1922); *McBride,* 118 N.C. App. at 318; 454 S.E.2d at 841. Notably, our Supreme Court has stated that the operator of a motor vehicle may be convicted of assault with a deadly weapon when, by means thereof, he strikes and injures a person so long as there is either (1) an actual intent to inflict injury, or (2) culpable or criminal negligence from which such intent may be implied. *See Eason,* 242 N.C. at 65, 86 S.E.2d at 778.

In this case, all the elements of assault with a deadly weapon inflicting serious injury are present. The defendant drove his motor vehicle, a deadly weapon, in a culpably or criminally negligent manner. As a result thereof, the defendant inflicted serious injuries upon Aline J. Iodice, Melinda P. Warren, and Lea Temple Billmeyer. Accordingly, the defendant was properly convicted of these crimes.

Given that the defendant was properly convicted of assault with a deadly weapon inflicting serious injury, the language of our felony-murder statute ostensibly condones his felony-murder conviction. Indeed, I concur with the majority's acceptance of the State's syllogistical reasoning: (1) one can be convicted of a felony-murder crime if a killing occurs during a felony that involves the use of a deadly weapon; (2) an individual who recklessly drives a motor vehicle into another causing a serious injury but not death has committed the felony of assault with a deadly weapon inflicting serious injury; (3) the defendant killed one person and seriously injured others while recklessly driving his motor vehicle; (4) accordingly, the defendant is guilty of assault with a deadly weapon inflicting serious injury; (5) therefore, the defendant is also guilty of felony murder.

Although the State's reasoning appears sound, syllogistic logic does not end our analysis. Specifically, a thorough and proper analysis of a criminal conviction also requires this Court to analyze the constitutional considerations surrounding this matter. It is in this respect that I analyze the defendant's argument that his due process rights were violated by the State's quasi *ex post facto* application of the felony-murder rule. Because the defendant's due process argument involves principles and tenets of *ex post facto* jurisprudence, I begin this analysis with a brief introduction and outline of *ex post facto* law.

Since it's earliest decisions, the United States Supreme Court has defined an *ex post facto* law as one which: (1) makes an action criminal which was done before the passing of the law and which was

innocent when done, (2) aggravates a crime or makes it greater than when it was committed, (3) allows imposition of a different or greater punishment than was permitted when the crime was committed, or (4) alters the legal rules of evidence to permit different or less testimony to convict the offender than was required at the time the offense was committed. *See Collins v. Youngblood*, 497 U.S. 37, 42, 111 L. Ed. 2d 30, 38-39 (1990); *Calder v. Bull*, 3 U.S. 386, 390, 1 L. Ed. 648, 650 (1798); *State v. Vance*, 328 N.C. 613, 620, 403 S.E.2d 495, 500 (1991). "Two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29, 67 L. Ed. 2d 17, 23 (1981).

The prohibition against *ex post facto* laws set forth in both Article I, Section 10 of the United States Constitution and Article I, Section 16 of the North Carolina Constitution is directed toward legislative action. *See Marks v. United States*, 430 U.S. 188, 191-92, 51 L. Ed. 2d 260, 264-65 (1977); *Vance*, 328 N.C. at 620, 403 S.E.2d at 500. Nonetheless, the United States Supreme Court has held that "[i]f a state legislature is barred by the *Ex post facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Bouie v. City of Columbia*, 378 U.S. 347, 353-54, 12 L. Ed. 2d 894, 900 (1964). Consequently, "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids," *Id.* at 353, 12 L. Ed. 2d at 899, and therefore is unconstitutional under the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States. *See Vance*, 328 N.C. at 620, 403 S.E.2d at 500.

Significantly, it is of no import that the defendant knew his conduct was criminal at the time it occurred. As stated by the United States Supreme Court, "[t]he enhancement of a crime, or penalty, seems to come within the same mischief as the creation of a crime or penalty" and is accordingly equally prohibited. *Collins*, 497 U.S. at 44, 111 L. Ed. 2d at 40. In fact, the bulk of *ex post facto* jurisprudence involves claims that a law inflicted a greater punishment than the law annexed to the crime when committed. *See Lynce v. Mathis*, 519 U.S. 433, 441, 137 L. Ed. 2d 63, 72 (1997). This jurisprudence summarily holds that constitutional-due-process protections, like *ex post facto* protections, proscribe judicially enforced changes in legal interpreta-

tions which unforeseeably expand the punishment accompanying a conviction beyond that which an actor could have anticipated at the time he committed the criminal act. *See Helton v. Fauver*, 930 F.2d 1040, 1045 (3rd Cir. 1991); *Dale v. Haeberlin*, 878 F.2d 930, 934 (6th Cir. 1989), *cert. denied*, 494 U.S. 1058, 108 L. Ed. 2d 767 (1990).

Concomitant with the due-process analysis relating to *ex post facto* laws is the due-process requirement of fair notice. That is, if an actor has fair notice that his conduct is proscribed by a statute or a judicial construction of that statute, then the actor has no rightful due-process claim that a later judicial construction operated like a quasi *ex post facto* law.

The fair-notice requirement has three related manifestations. First, the vagueness doctrine bars enforcement of a "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 70 L. Ed. 322, 328 (1926). Second, "as a sort of 'junior version of the vagueness doctrine,' the canon of strict construction of criminal statutes, or rule of lenity, ensures fair notice by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266, 137 L. Ed. 2d 432, 442 (1997) (citation omitted). Third, "although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed within its scope." *Id.*; *see also Marks*, 430 U.S. at 191-92, 51 L. Ed. 2d at 260. Accordingly, a criminal statute may only be used as the basis for a conviction or an increased penalty if the statute and its accompanying interpretation meet all three of the fair-notice requirements.

In this case, this Court is asked to determine whether the defendant was provided fair notice that his culpably negligent driving would subject him to our felony-murder rule and possible capital punishment. The majority opinion concludes that the defendant's current and prior convictions for drunk driving evidence that he received constitutionally adequate notice that a culpably negligent driver in North Carolina could be subjected to the death penalty. Specifically, the majority opinion contends that the defendant was provided adequate notice because any reasonably intelligent person knows that driving while intoxicated subjects him to potentially harsh sanctions. In support of this argument, the majority opinion cites *State v. Trott*,

190 N.C. 674, 130 S.E. 627 (1925), where our Supreme Court upheld the defendant's conviction for *second-degree* murder when, while intoxicated, he allowed another intoxicated person to operate his motor vehicle.

The majority opinion, by citing *Trott*, sets forth the proposition that the defendant had adequate notice that he could be convicted of second-degree murder. I concur in this proposition because it is well supported by North Carolina jurisprudence. *See* N.C. Gen. Stat. § 14-17; N.C. Gen. Stat. § 20-141.4; *State v. Rich*, 1999 WL 100916 (1999) (affirming second-degree murder conviction for driver who was speeding and veered out of his lane of travel); *State v. Snyder*, 311 N.C. 391, 317 S.E.2d 394 (1984) (affirming second-degree murder conviction in facts substantially similar to those in the case *sub judice*). Indeed, I conclude this dissent by noting that the State could have constitutionally obtained two life sentences against the defendant if it had charged him with second-degree murder.

Nonetheless, I emphasize that *Trott* fails to support the majority opinion's proposition that a culpably negligent motorist, regardless of his level of sobriety, can be lawfully convicted of first-degree-felony murder when, as a result of his unlawful conduct, death and serious injury occur. The majority opinion implies that *Trott* supports such a proposition by noting that the defendants in that case were *indicted* for first-degree murder. It is unclear from the opinion, however, whether the defendants were in fact charged in this manner[5]. More importantly, the defendants were ultimately convicted of second-degree murder and accordingly our Supreme Court never addressed the pertinent issue of whether the charged defendants could have been lawfully convicted of first-degree murder. *Id.* Therefore, the majority opinion's reliance on *Trott* is unfounded.

Additionally, the majority opinion states that the defendant was provided fair notice because he knew that "he was taking serious risks—and facing serious consequences—when he continued to operate his automobile under the influence of drugs and alcohol." This reasoning is unpersuasive. Just because an individual knows that his conduct is risky and subjects him to potential sanctions, that

---

5. Specifically, the opinion states that "[t]he defendant and one Robert Michael were jointly indicted for the murder of Evelyn Rowe. When the case was called for trial, the solicitor announced that the State would prosecute the defendants only for murder in the second degree, or for manslaughter. Both were convicted of murder in the second degree." *Trott*, 190 N.C. at 674, 130 S.E. at 627. I do not interpret this language as evidence that the defendants were indicted for first-degree murder.

**STATE v. JONES**

[133 N.C. App. 448 (1999)]

does not mean that the individual can be prosecuted under any law. Indeed, specific laws are created and passed to address specific issues. It would be absurd, for example, to say that an embezzler could be lawfully convicted of murder because he knew that his unlawful acts were risky and subjected him to serious consequences. That is, a distinction must be made between having notice that your actions are unlawful and having notice with respect to which laws and punishments apply to that unlawful conduct. Perhaps more distressing is the majority opinion's continued and significant reliance on the defendant's intoxicated state as providing him with constitutionally fair notice that his conduct subjected him to the felony-murder rule and possible capital punishment. A proper examination of the record illustrates that the defendant's intoxicated state, though morally repugnant, beared no legal consequence to his felony-murder conviction. The defendant's intoxication was legally immaterial because the underlying felony supporting his felony-murder conviction was assault with a deadly weapon, not felonious driving while impaired.

Recognizing and addressing this distinction is of paramount importance because the State was not required to present any evidence of the defendant's intoxication to provide the jury with sufficient evidence to convict him of assault with a deadly weapon. Accordingly, the majority, by classifying the defendant as an *intoxicated* culpably-negligent driver, rather than simply as a culpably negligent driver, ignored the distinction between an individual whose felony-murder conviction is supported by a charge of assault with a deadly weapon and an individual whose felony-murder conviction is supported by felonious driving while impaired.

The majority's failure to discern this distinction results in an opinion that addresses this watershed issue too narrowly. In effect, the majority opinion examines this case only with respect to how it affects intoxicated motorists as opposed to motorists in general. Moreover, the majority opinion addresses the defendant's arguments only as they pertain to an intoxicated motorist, disregarding the fact that we must determine these issues as they pertain to a culpably negligent driver. Significantly, the majority opinion analyzed the issue of whether the defendant received fair notice by determining whether an intoxicated motorist knew or should have known that his conduct would subject him to potential capital punishment. If the underlying felony in this case had been felonious driving while impaired, such an analysis would have been warranted. However, since the underlying

felony in the case *sub judice* was assault with a deadly weapon, the appropriate analysis involves a determination as to whether a culpably negligent driver—whether intoxicated or sober—knew or should have known that his conduct subjects him to potential capital punishment. Because the majority opinion failed to make this distinction, I now proceed to analyze this compelling issue.

Undoubtedly, a culpably negligent driver in North Carolina should contemplate that his conduct requires punitive repercussions; however, such repercussions are expected to be proportional to the unlawful conduct. *See generally State v. Kirkpatrick*, 345 N.C. 451, 454, 480 S.E.2d 400, 405 (1997) ("A primary purpose of sentencing is to punish an offender with the degree of severity that his culpability merits."). Prior to the case *sub judice*, no culpably negligent driver in this State had ever been prosecuted under the felony-murder rule. Accordingly, North Carolina drivers most assuredly had no precedent alerting them that culpably negligent driving may subject them to a capital trial and the prospect of the death penalty.

To emphasize this point, consider the following hypothetical case: a grandmother is involved in an accident when, in an effort to get to her grandchild's school on time, she weaves through traffic at eighty miles-per-hour in a sixty-five mile-per-hour zone. Although this hypothetical appears factually distinct from the case *sub judice*—comparing a drunk driver who has a pattern of reckless behavior with a woman who only appears to be violating a traffic regulation—legally speaking, these cases are indistinguishable. Reiterating, because the underlying offense for the defendant's felony-murder conviction was assault with a deadly weapon inflicting serious injury, the fact that the defendant was impaired at the time of the offense is immaterial to the legal issue in this case. It was the accident at the University Parkway intersection, coupled with the defendant's speeding and driving in the wrong lane of travel, which standing alone constituted the culpable or criminal negligence needed to support his conviction for assault with a deadly weapon inflicting serious injury.

To clarify, a North Carolina motor vehicle operator may properly be convicted of assault with a deadly weapon when he strikes and injures a person while operating his vehicle *in a culpably or criminally negligent manner. See Eason*, 242 N.C. at 65, 86 S.E.2d at 778. Culpable or criminal negligence, as defined by our Supreme Court, is "such recklessness or carelessness, proximately resulting in injury or

STATE v. JONES

[133 N.C. App. 448 (1999)]

death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *State v. Cope*, 204 N.C. 28, 30, 167 S.E. 456, 458 (1933). Significantly,

> [t]he violation of a safety statute which results in injury or death will constitute culpable negligence if the violation is wilful, wanton, or intentional. But, where there is an unintentional or inadvertent violation of the statute, . . . [it] must be accompanied by recklessness of probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, amounting altogether to a thoughtless disregard of consequences or of a heedless indifference to the safety of others.

*State v. Hancock*, 248 N.C. 432, 435, 103 S.E.2d 491, 494 (1958).

Under the preceding rules, the evidence sufficiently indicates that the defendant drove in a culpably or criminally negligent manner. However, under jurisprudence set by our Supreme Court, the speeding driver in our hypothetical could also be found to have driven in a culpably or criminally negligent manner.

For example, in *State v. Wilson*, 218 N.C. 769, 12 S.E.2d 654 (1941), our Supreme Court upheld the defendant's conviction for reckless driving[6] when the State's evidence tended to show that he was exceeding the speed limit by driving sixty miles-per-hour and, as a result thereof, he crashed into the rear of a car being driven in the same direction. On this evidence alone, the Court upheld the defendant's conviction. *Id.*

Similarly, in *State v. Steelman*, 228 N.C. 634, 46 S.E.2d 845 (1948), our Supreme Court affirmed the defendant's reckless-driving conviction when the evidence showed that he drove at an excess rate of speed and thereafter ran into the rear end of a car traveling in the same direction. The only evidence in that case was that the extent of resultant damage to both vehicles indicated "excessive speed and the absence of proper regard for the rights and safety of others." *Id.* at 636, 46 S.E.2d at 846.

These cases demonstrate instances whereby an individual may be found culpably or criminally negligent for doing little more than traveling at an excessive rate of speed. *See also Swicegood v. Cooper*, 341

---

6. As previously stated, although *Wilson* and *Steelman* involve persons convicted of reckless driving, they are equally applicable to our analysis given that "[t]he language in each section of the reckless driving statute defines culpable negligence." *Ingle*, 271 N.C. at 284, 156 S.E.2d at 271. (citations omitted).

N.C. 178, 181, 459 S.E.2d 206, 208 (1995) (stating that "[w]hether a driver exceeds the [speed] limit by fifteen miles per hour in a thirty-five mile per hour zone or a fifty mile per hour zone, he endangers those around him"); *Ingle*, 271 N.C. at 284, 156 S.E.2d at 272 (stating that failing to keep reasonable lookout coupled with dangerous speed equates to reckless driving); *Grissom*, 17 N.C. App. at 375, 194 S.E.2d at 228 (holding that excessive speed can constitute reckless driving); *State v. Floyd*, 15 N.C. App. 438, 440, 190 S.E.2d 353, 355 (affirming reckless driving conviction when defendant drove sixty to seventy miles-per-hour in a forty-five mile-per-hour zone and swerved), *disc. rev. denied*, 281 N.C. 760, 191 S.E.2d 363 (1972).

Under the preceding cases, both the defendant and the speeding grandmother from our hypothetical were driving in a culpably or criminally negligent manner. Accordingly, because a driver need only be found culpably or criminally negligent to sustain an assault with a deadly weapon charge, both the defendant and the speeding grandmother could properly be convicted of that crime. Therefore, following the majority's holding that assault with a deadly weapon inflicting serious injury, when the deadly weapon is a motor vehicle, is an enumerated felony under our felony-murder rule, both the defendant and the speeding grandmother could properly be charged with felony murder. Surely, the speeding grandmother in the hypothetical did not have fair notice that by violating a traffic regulation she would be subjecting herself to the felony-murder rule and the death penalty.

Although the defendant's conduct is more egregious than the speeding grandmother's, the egregiousness of that conduct did not provide the defendant with any more notice than the grandmother that the felony-murder rule applies to a culpably negligent driver who seriously injures at least one person and kills another. Moreover, while it may appear distinguishing to point out that the defendant had more notice than the speeding grandmother because he knew or should have known that by driving after drinking and taking narcotics he was subjecting himself to harsh penalties; legally, the defendant's impaired state was not material to his conviction because the underlying felony supporting his felony-murder conviction was assault with a deadly weapon inflicting serious injury, not felonious driving while impaired. Thus, as to the defendant's felony-murder conviction, he would be in the same tenuous legal position regardless of whether he was impaired.

I find further support for my conclusion that the defendant was not provided with fair notice by looking to the history of our felony-

murder rule. Our felony-murder rule was codified by the General Assembly in 1893 and our Supreme Court first characterized a motor vehicle as a deadly weapon in 1922. *See generally State v. Streeton*, 231 N.C. 301, 305, 56 S.E.2d 649, 652 (1949). Despite this long-standing jurisprudence, neither this State, nor any other state, has ever applied the felony-murder rule to a culpably negligent driver. Thus, despite over seventy-five years of applying and interpreting our felony-murder rule, no driver has ever been prosecuted in this manner, nor has there been even the slightest foreshadowing of such use. Indeed, the fact that our felony-murder rule has never been used in this manner illustrates that the only notice the State provided the defendant regarding the application of the felony-murder rule to a culpably negligent driver is that it would *not* be used in this manner. *See e.g. Snyder*, 311 N.C. 391, 317 S.E.2d 394 (finding defendant guilty of second-degree murder, not felony murder, when his reckless and impaired driving caused three deaths).

In sum, I would hold that the State violated the defendant's due process rights. Specifically, the defendant was not provided fair notice that his conduct would subject him to the felony-murder rule and possible capital punishment. I undertook this extensive analysis to demonstrate that this Court should not allow the egregious facts of this case to guide its decision. Should we let the particular facts of this case be our sole guide, we would be letting bad facts make bad law. Moreover, we would be setting a dangerous precedent that could lead to even more egregious injustices, especially since those injustices will be sanctioned by this Court and this State. As stated by Justice Jackson in his dissent in *Korematsu v. United States*, 323 U.S. 214, 246, 89 L. Ed. 194, 214 (1944), "once a judicial opinion rationalizes such an order to show that it conforms to the Constitution, or rather rationalizes the Constitution to show that the Constitution sanctions such an order, the Court for all time has validated the principle."

II.

Assuming *arguendo* that the State may constitutionally apply the felony-murder rule to the defendant in this case, I nonetheless would hold that the defendant's first-degree murder conviction must be vacated because the State's use of the felony-murder rule in this manner was neither contemplated nor intended by our General Assembly.

At the outset, I address the majority's contention that the defendant failed to present this issue in his brief and therefore abandoned

his right to have this Court consider it on appeal. Admittedly, the defendant failed to precisely label any of his arguments as relating to legislative intent. Nonetheless, the defendant argued with respect to legislative intent within his contention that the term "deadly weapon" is unconstitutionally vague. Specifically, the defendant cited to *State v. Beale*, 324 N.C. 87, 371 S.E.2d 1 (1989), to illustrate the proposition that we must endeavor to discern legislative intent when determining whether a felony was intended by our General Assembly to sustain a charge of felony murder. Immediately thereafter, the defendant argued that "*[h]ad the legislature intended* to include [vehicular homicide based upon culpable negligence] within the purview of the felony murder rule in section 14-17, it could have done so explicitly." This argument, albeit improperly labeled, undoubtedly pertains to the legislative intent behind the felony-murder rule. It follows that the defendant properly preserved this argument on appeal. Therefore, this Court should examine whether the State's novel application of the felony-murder rule comports with the General Assembly's intent in codifying and amending our felony-murder rule.

As stated, the felony-murder rule has always been a part of our common law and was codified by our General Assembly in 1893. *See Streeton*, 231 N.C. at 305, 56 S.E.2d at 652. There are three main justifications for the rule's existence: (1) it deters negligent and accidental killings during the commission of felonies; (2) it deters the commission of the dangerous felonies themselves; and (3) an individual who commits or attempts to commit a felony has the necessary culpability to be found guilty of murder. Roth and Sundby, *The Felony murder Rule: A Doctrine At Constitutional Crossroads*, 70 Cornell L. Rev. 446, 450 (1985).

Our Supreme Court has stated that the rationale behind the felony-murder rule is

> that one who commits a felony is a *bad person with a bad state of mind,* and he has caused a bad result, so that we should not worry too much about the fact that the fatal result he accomplished was quite different and a good deal worse than the bad result he intended.

*State v. Richardson*, 341 N.C. 658, 666-67, 462 S.E.2d 492, 498 (1995) (*quoting State v. Wall*, 304 N.C. 609, 626, 286 S.E.2d 68, 78 (1982) (Copeland, J., dissenting).). (Emphasis added.)

Despite the long-standing use of the felony-murder rule in this State, in 1977 the General Assembly amended the rule to both limit

and expand its coverage. Prior to 1977, felony murder was defined as a killing "committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary, or *other felony*." 1949 N.C. Sess. Laws Ch. 299 § 1. (Emphasis added.) Currently, felony murder is defined as a killing "committed in the perpetration or attempted perpetration of any arson, rape, robbery, kidnapping, burglary, or *other felony committed or attempted with the use of a deadly weapon*." N.C. Gen. Stat. § 14-17. (Emphasis added.)

Our current definition of felony murder is more expansive than the previous one because it contains more enumerated felonies. Specifically, while our earlier definition listed "arson, rape, robbery, [and] burglary" as enumerated felonies, our current definition not only enumerates those felonies, but also enumerates any rape, sex offense, or kidnapping.

At the same time, our current definition is less expansive because the earlier definition contained vague "other felony" language. This vague "other felony" language was interpreted by our Supreme Court to refer to any felony which "creates any substantial foreseeable human risk and actually results in the loss of life." *State v. Thompson*, 280 N.C. 202, 211, 185 S.E.2d 666, 672 (1972). Accordingly, by changing the statutory language from "other felonies" to those "committed or attempted with the use of a deadly weapon," our General Assembly has limited the "other felonies" which would support a felony-murder charge. *See Wall*, 304 at 614, 286 at 72. This latter change is of particular import to the case *sub judice*.

By limiting the coverage of the "other felony" language of the felony-murder rule, our General Assembly must have intended to limit the coverage of the felony-murder rule itself. Logically, the amendment limited the "other felonies" which could form the basis of a felony-murder charge from those which "create[] substantial foreseeable human risk and actually result[] in the loss of life" to only those felonies which involve the "use of a deadly weapon." Clearly, by limiting the number of felonies that support a felony-murder conviction, the General Assembly must have intended to reign in the felony-murder rule's expansion.

At first glance, it appears that although the General Assembly limited the felonies which could be used to form the basis of a felony-murder charge, it nonetheless intended to include assault with a deadly weapon within the group of enumerated felonies as demonstrated by the plain language of the amended statute. While the plain

language of the statute ostensibly mandates this conclusion, it persuasively appears that the General Assembly did not contemplate the State's novel application of that language in this case.

"When a literal interpretation of the statutory language yields absurd results . . . or contravenes clearly expressed legislative intent, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Charlotte Housing Auth. v. Patterson*, 120 N.C. App. 552, 556, 464 S.E.2d 68, 71 (1995). Further, the General Assembly is not presumed to intend innovations upon the common law and accordingly innovations not within the Assembly's intentions shall not be carried into effect. *See Buck v. U.S. Fidelity & Guaranty Co.*, 265 N.C. 285, 290, 144 S.E.2d 34, 37 (1965); *Price v. Edwards*, 178 N.C. 493, 101 S.E. 33 (1919). As recently stated by another court, "[w]hile inventive and clever applications of statutes may have their place in some legal settings, they have no place in an indictment charging someone with [a] serious felon[y] . . . ." *United States v. Hsia*, 24 F. Supp. 2d 33, 54 (D.D.C. 1998).

In the case *sub judice*, although the plain language of N.C. Gen. Stat. § 14-17 includes as an enumerated felony one which is committed with the use of a deadly weapon, the history of this legislation indicates the General Assembly did not intend to include within the ambit of N.C. Gen. Stat. § 14-17 a culpably negligent driver whose conduct results in at least one injury and one death. First, as stated, the General Assembly has taken action to limit rather than expand the coverage of the felony-murder rule. This limiting trend indicates that the General Assembly did not intend to enumerate a crime that in many circumstances involves an individual wholly lacking in intent and malice. Such circumstances exist in cases like that posed by our earlier hypothetical, *Wilson*, and *Steelman*.

Further, as stated, the primary rationale for our felony-murder rule is that "one who commits a felony is a *bad person with a bad state of mind*, . . . so that we should not worry too much about the fact that the fatal result he accomplished was quite different and a good deal worse than the bad result he intended." *Richardson*, 341 N.C. at 666-67, 462 S.E.2d at 498. Although this rationale may apply to the case *sub judice*, it does not necessarily apply to the average person who drives in excess of the posted-speed limit or in some other manner which may be considered culpably negligent.

Again, my hypothetical, along with the *Smith* and *Wilson* cases, demonstrate situations where a person can be found guilty of assault

with a deadly weapon even if he is not a "bad person with a bad state of mind." In these situations, the rationale behind the felony-murder rule does not apply. Nonetheless, under the majority opinion, those individuals would be subject to the felony-murder rule and possibly capital punishment.

I find further support for my conclusion that our General Assembly did not intend to include these situations within the ambit of the felony-murder rule by looking to the punishments the felony-murder rule proscribes. Under N.C. Gen. Stat. § 14-17, if a person is found guilty of felony murder, the jury must decide between two punishments, death or life imprisonment. N.C. Gen. Stat. § 14-17. Reconsidering my hypothetical, should the State decide to prosecute the speeding driver for felony murder, the trier of fact upon a finding of guilt would be forced to either sentence the driver to death, to life imprisonment, or use its inherent power of jury nullification and acquit. Accordingly, the jury would be facing a Hobson's choice. I do not believe our General Assembly would intend such a result.

Perhaps more distressing is that under the State's syllogistic argument, it can prosecute any individual for felony murder if that person's reckless driving results in at least one serious injury and one death. Significantly, once the State has demonstrated culpable or criminal negligence, the individual is guilty of assault with a deadly weapon inflicting serious injury and therefore guilty of an enumerated felony. Thus, under the State's argument, the jury is forced to convict the individual of felony murder based on the plain language of the statute. Thereafter, the jury is forced to sentence the individual to life imprisonment or death.

Precedent established by our Supreme Court further supports my conclusion. In *State v. Beale*, 324 N.C. 87, 376 S.E.2d 1 (1989), the Supreme Court of North Carolina was asked to determine whether the unlawful, willful and felonious killing of a viable but unborn child constituted felony murder under N.C. Gen. Stat. § 14-17. In deciding this issue, the Court had to determine whether the term "murder," as utilized in that statute, included the killing of a viable but unborn child. *Id.* After using the rule of lenity and analyzing the legislative intent behind the felony-murder rule, the Court concluded that such a killing was not within the purview of the felony-murder rule. *Id.* at 93, 376 S.E.2d at 4. The Court supported its conclusion by stating that the legislature did not intend the intentional destroying of a fetus to be within the felony-murder rule by pointing to N.C. Gen. Stat. § 14-44 through 14-46 which deal with the crimes of abortion and

kindred offenses. *Id.* at 92, 376 S.E.2d at 4. According to the Court, "[t]he legislature has considered the question of intentionally destroying a fetus and determined the punishment therefor." *Id.* That is, the aforementioned specific statutes demonstrated to the Court that the legislature intended these crimes to be handled in a manner separate and distinct from felony murder.

Similarly, in this case, there are specific statutes, felonious and misdemeanor death by vehicle, dealing with the specific criminal acts undertaken by the defendant. *See* N.C. Gen. Stat. § 20-141.4. Significantly, these statutes were cited by the Court in *Beale* to illustrate other crimes that are not within the purview of the felony-murder rule. *See Beale*, 324 N.C. at 92, 376 S.E.2d at 4. This explicit recognition is of such import that I recite the entire paragraph below:

> The creation and expansion of criminal offenses is the prerogative of the legislative branch of the government. The legislature has considered the question of intentionally destroying a fetus and determined the punishment therefor. (Citations omitted). It has adopted legislation dealing generally with the crimes of abortion and kindred offenses. (Citations omitted). *It has also created the new offenses of felony and misdemeanor death by vehicle.* (Citations omitted.) It has amended N.C. Gen. Stat. § 14-44 and N.C. Gen. Stat. § 14-17 on more than one occasion. Nothing in any of the statutes or amendments shows a clear legislative intent to change the common law rule . . . .

*Id.* (Emphasis added.)

Like *Beale*, the Court in the instant case is asked to determine whether the legislature intended a certain criminal act to be within the purview of the felony-murder rule. This Court may not depart from our Supreme Court's reasoning in *Beale*. That is, both the felony in this case and the felony in *Beale* were not considered adequate bases for application of the felony-murder rule at common law. Moreover, in both cases the underlying felony had never before been used as the underlying felony for application of the felony-murder rule—despite their long-standing recognition as a crime. Lastly, in both cases the General Assembly had considered the exact conduct at issue and decided to apply a unique set of rules and punishments applicable to that conduct.

In summation, the State has failed to recognize that our General Assembly never contemplated nor intended the felony-murder rule to

be used as a means of prosecuting a culpably negligent driver. Rather, the State decided to use statutory gymnastics to judicially legislate a law that bears harshly upon every citizen of this State. Justice Scalia most recently condemned such judicial legislation when he stated "[i]f to state this case is not to decide it, the law has departed further from the meaning of the language than is appropriate for a government that is supposed to rule (and to be restrained) through the written word." *United States v. Rodriquez-Moreno*, 119 S. Ct. 1239, 1245 (1999) (Scalia, J., dissenting).

### III. CONCLUSION

Initially, I would affirm the defendant's conviction for assault with a deadly weapon inflicting serious injury with respect to Aline J. Iodice, Melinda P. Warren, and Lea Temple Billmeyer. Moreover, I would affirm the defendant's conviction for assault with a deadly weapon upon Margaret Fiona Penney and his conviction for driving while impaired.

However, I would vacate the defendant's first-degree murder conviction because the State violated the defendant's due process rights by applying the felony-murder rule in a novel manner that failed to accord him a fair notice. Further, I would hold that even without the constitutional infirmities surrounding this case, the defendant's first-degree murder conviction must be vacated because our General Assembly neither contemplated nor intended the felony-murder rule to apply to a culpably negligent driver whose conduct results in at least one injury and one death.

Importantly, it should be noted that the State could have charged the defendant with a plethora of other offenses including felonious death by vehicle, involuntary manslaughter, and second-degree murder. *See* N.C. Gen. Stat. § 14-17; N.C. Gen. Stat. § 20-141.4; *Rich*, 1999 WL 100916 (1999) (affirming second-degree murder conviction for driver who was speeding and veered out of his lane of travel); *Snyder*, 311 N.C. 391, 317 S.E.2d 394 (affirming second-degree murder conviction in facts substantially similar to those in the case *sub judice*). Moreover, under structured sentencing, if the State had charged the defendant with second-degree murder and he was convicted thereof, the trial court, if it found aggravating circumstances, could have sentenced the defendant to two consecutive sentences of life imprisonment. *See* N.C. Gen. Stat. § 15A-1340.16(b) (Supp. 1996); *State v. Dickens*, 346 N.C. 26, 45, 484 S.E.2d 553, 563 (1997) (affirming sentence of life imprisonment when defendant was convicted of a

STATE v. JONES

[133 N.C. App. 448 (1999)]

class C felony with aggravating circumstances). Indeed, I am profoundly concerned with this country's drunk driving epidemic and believe that individuals like the defendant deserve and ultimately should bear harsh sanction for their actions. Accordingly, my decision would not ameliorate the potential to appropriately punish the defendant for his unlawful conduct, but rather would have set forth a constitutionally sound manner of doing so.

I would hold:

NO ERROR, REMAND FOR SENTENCING, 96 CRS 36858, assault with a deadly weapon inflicting serious injury upon Aline J. Iodice.

NO ERROR, REMAND FOR SENTENCING, 96 CRS 36861, assault with a deadly weapon inflicting serious injury upon Melinda P. Warren.

NO ERROR, 96 CRS 36862, assault with a deadly weapon upon Margaret Fiona Penney.

NO ERROR, REMAND FOR SENTENCING, 97 CRS 07301, assault with a deadly weapon inflicting serious injury upon Lea Temple Billmeyer.

NO ERROR, 97 CRS 07301, driving while impaired.

VACATE, 96 CRS 34278, first-degree murder of Julie Marie Hansen.

VACATE, 96 CRS 34279, first-degree murder of Maia Witzl.